HONORABLE RICARDO S. MARTINEZ

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION,

                Plaintiff,

    vs.

INTERNAL REVENUE SERVICE,

                Defendant.

NO. 2:15-cv-01605 RSM

IRS'S MOTION FOR SUMMARY
JUDGMENT

NOTE ON MOTION CALENDAR
JUNE 27, 2022

U.S. Department of Justice, Tax Division
Ben Franklin Station, P.O. Box 227
Washington, D.C. 20044
202-616-8994 (Phone)
202-514-6866 (Fax)

The Internal Revenue Service ("Service") moves the Court under Federal Rule of Civil Procedure 56(a) for summary judgment against Plaintiff the Microsoft Corporation in this Freedom of Information Act ("FOIA") (5 U.S.C. § 552) and Administrative Procedure Act ("APA") (5 U.S.C. § 701 et seq.) suit. As explained below, there are no genuine issues of material fact, and the Service is entitled to judgment as a matter of law.

## Introduction

Plaintiff Microsoft is the subject of an IRS examination (or audit) for the 2004 through 2006 tax years. The audit is one of the largest in the Service's history. Plaintiff filed requests under the FOIA for records relating to that audit, which remains ongoing. Before this litigation, the Service released around 65,800 pages in full, 9,800 pages in part, and withheld 78,600 pages in full. In response to this suit, the IRS re-reviewed all the records withheld in full and in part, and has ultimately released about 91,900 pages in full, 13,000 pages in part, and withheld 49,400 pages in full. The declarations and *Vaughn* index submitted with this motion show that the Service has met its legal obligations to Plaintiff under the FOIA. The attached evidence establishes that the Service (1) conducted a reasonable search for records potentially responsive to Plaintiff's FOIA requests; and (2) withheld only those responsive records in whole or in part under one or more of the several statutory exemptions. Finally, Plaintiff's claim under the APA seeks relief that is not available under that statute because Plaintiff has an adequate remedy under the FOIA.

## Factual background

### 1. The FOIA requests

Plaintiff made the two FOIA requests that are the subject of this action in August 2011. (Declaration of Cathy A. Goodson ¶¶ 4–9; ECF doc. 1 (Compl.) Exs. I & II.) The two requests sought all documents relating to the Service's exam and analysis under 26 U.S.C. § 482 of two

U.S. Department of Justice, Tax Division
Ben Franklin Station, P.O. Box 227
Washington, D.C. 20044
202-616-8994 (Phone)
202-514-6866 (Fax)

cost sharing arrangements,[1] one covering the Asia, South East Asia, and South Pacific regions ("APAC"); and one covering the Americas region. (*Id.*) Each request, in eight main subparts, identified specific types of documents, certain custodians, and various IRS and IRS Counsel offices that were to be included within the scope of the request. (*Id.*)

**2. The Service's search for responsive records**

Both FOIA requests were originally assigned pre-suit to Senior Disclosure Specialist Brenda Ball. (Goodson Decl. ¶ 10.) In response to Plaintiff's request for an estimate of costs, Cathy Goodson, then Associate Area Counsel for the Office of Chief Counsel Large Business & International ("Counsel LB&I") in Seattle, Washington, assigned review of the FOIA requests to Seattle LB&I Counsel attorney Shawn Barrett. (*Id.* ¶¶ 11–12.) Ms. Goodson and other LB&I attorneys in Seattle were involved in providing legal advice related to matters arising during Plaintiff's audit. (*Id.*)

The Service's search to respond to the FOIA requests was completely conducted before Plaintiff filed this suit. The search for potentially responsive records began with circulating the request among the identified custodians in the two requests, and then methodically fanning out its search to include additional custodians either thought to potentially possess responsive records or identified by those first set of custodians. The custodians were first asked to self-search for both hard-copy and electronically stored information ("ESI"), but ultimately the Service engaged the IRS Information Technology group ("IRS IT") to collect the ESI by submitting an electronic discovery request ("EDR") memorandum. The Service also searched for, and collected, records outside the EDR process: (1) hard-copy documents, which were scanned and found by potential custodians through a self-search; (2) electronic records on an on-site server located at the office on Plaintiff's campus; (3) a record maintained by the Counsel

---

[1] The Service's analysis under § 482 of the cost-sharing arrangements covering the APAC and Americas regions is at issue in the Service's examination. (Goodson Decl. ¶ 11.)

U.S. Department of Justice, Tax Division
Ben Franklin Station, P.O. Box 227
Washington, D.C. 20044
202-616-8994 (Phone)
202-514-6866 (Fax)

Library; and (4) records for two custodians who opted out of the EDR collection process because they had previously self-collected their own ESI.

### I.   Initial self-search by and identification of potential custodians

In September 2011, LB&I Counsel emailed all individuals named in the FOIA requests to provide them with copies of the requests, and ask that they preserve all responsive documents. (Goodson Decl. ¶ 14.) Recipients were told that the FOIA requests were comprehensive, and incorporated all communications, including emails, involving IRS employees or contractors regarding, referring, or relating to the examination of the APAC and Americas issues. (*Id.*) Recipients were also asked to forward the email to any other IRS or Counsel personnel who they believed could have documents responsive to the requests. (*Id.*)

Additional individuals thought to possess potentially responsive information were identified, and in October 2011, Ms. Barrett emailed all potential IRS and IRS Counsel custodians identified to date to request that they search their electronic and paper files for responsive records. (Goodson Decl. ¶ 15.) They were told to limit the scope of their search to documents from February 2007 (when the audit began) through September 28, 2011 (when the FOIA requests were finalized). (*Id.*) Those who found responsive records were asked to send their documents to Ms. Barrett. (*Id.*) The identified potential custodians of responsive records were asked to record their search methodology, to apprise Ms. Barrett if they had been unable to find any responsive documents, and to forward her email to any IRS or IRS Counsel personnel who they believed could have responsive documents. (*Id.*) The potential custodians were also asked to inform Ms. Barrett if they needed assistance from IRS IT with either their search or their compilation of responsive documents. (*Id.*)

### II.   Initial identification of electronically stored information by custodians

Given the scope of the requests, Ms. Barrett in October 2011 got approval to engage IRS IT to use the electronic discovery request ("EDR") process to capture electronically stored

IRS'S MOTION FOR SUMMARY JUDGMENT
(Case No. 2:15-cv-1605)
Page 4

U.S. Department of Justice, Tax Division
Ben Franklin Station, P.O. Box 227
Washington, D.C. 20044
202-616-8994 (Phone)
202-514-6866 (Fax)

information ("ESI") as to Plaintiff's two FOIA requests. (Goodson Decl. ¶¶ 16–17.) Ms. Barrett accordingly emailed previously identified custodians to advise them that a litigation hold was being placed and that ESI procedures would be followed for collecting responsive records. (*Id.* ¶ 17.)

The emails asked custodians to (1) identify whether they had created or processed electronic data including emails and attachments, Word documents, Excel spreadsheets, and PowerPoint slides; and (2) identify whether they had maintained responsive records in any other program, application, system, or database. (Goodson Decl. ¶ 17.) If custodians maintained a specific folder(s) related to the subject matter of the FOIA requests, they were asked to provide the name of the folder(s). (*Id.*) They were also asked to share whether any electronic data was stored offline, such as in an external drive or storage device such as CDs or flash drives. (*Id.*)

The custodians were instructed to preserve and isolate all responsive data and maintain it in its native format and that all normal document retention periods were suspended for such data. (Goodson Decl. ¶ 17.) For any paper records that the custodians located and identify and responsive, they were instructed to scan and save those documents on a shared drive that would be available to Ms. Barrett and other LB&I Counsel personnel for review. (*Id.*)

### III.    The EDR process to collect ESI from identified custodians

In November 2011, Ms. Barrett provided the names of 27 IRS and Counsel employees who had been identified as custodians of data responsive to the FOIA requests to Procedure and Administration ("P&A") Branch 8, an office within Chief Counsel responsible for data capture of ESI for litigation purposes. (Goodson Decl. ¶¶ 16 & 18.) She also later provided three more names of custodians whose information would be needed to be included in the ESI data capture. (*Id.* ¶ 18.) In the meantime, Ms. Barrett, after consulting LB&I Counsel, LB&I Examination, and P&A Branch 8, created a list of keyword terms in November 2011 that could be used by IRS IT to run against data once it had been captured. (*Id.* ¶ 19.)

U.S. Department of Justice, Tax Division
Ben Franklin Station, P.O. Box 227
Washington, D.C. 20044
202-616-8994 (Phone)
202-514-6866 (Fax)

In December 2011, P&A submitted a priority electronic discovery request ("EDR") to IRS IT. (Goodson Decl. ¶ 20.) An EDR is the way IRS Counsel uses IRS IT to collect ESI. (*Id.* ¶ 21.) When implementing an EDR, IRS IT copies documents stored on an employee's hard drive, any shared or external drives, and email stored in the Microsoft Outlook Exchange servers. (*Id.* ¶ 21.)

Four individuals named in or within the scope of the FOIA requests had left the IRS or Counsel before receipt of the requests: Charles Davis, Barbara Leonard, Robert Geraghty, and Kenneth Christman. (Goodson Decl. ¶ 22). IRS IT was asked to collect ESI for these individuals, but found ESI for only three of them. (*Id.*) These three custodians' documents were included in the ESI database used to search for responsive records to the extent other custodians had duplicate copies of the three custodians' electronic records. (*Id.*) The ESI database also included copies of emails maintained by other custodians, but which had been sent to or received from, these separated individuals. (*Id.*)

IRS IT completed ESI collection from all custodians and applied the keyword terms to the captured data to segregate information responsive to the FOIA requests in April 2013. (Goodson Decl. ¶¶ 23–24.)

## IV. The search for potentially responsive records outside the EDR process

There were four categories of documents that were not collected by IRS IT through the EDR process: (1) hard-copy documents; (2) electronic records on the on-site server; (3) an IRS Counsel Library document; and (4) two custodians who opted out of the EDR collection process because they had previously self-collected their own ESI.

*Hard-copy records*

All custodians had to do self-searches for responsive hard-copy documents in their possession. (Goodson Decl. ¶ 28.) In an October 2011 email, Ms. Barrett notified all custodians that they were expected to search for hard-copy records in their possession and to scan those

U.S. Department of Justice, Tax Division
Ben Franklin Station, P.O. Box 227
Washington, D.C. 20044
202-616-8994 (Phone)
202-514-6866 (Fax)

1    records and place them on a shared drive for review. (*Id.*) When custodians stated that portions

2    of the requests were ambiguous, Ms. Barrett asked the assigned Disclosure Specialist to contact

3    Microsoft to clarify the type of information being sought by the FOIA requests. (*Id.* ¶ 29.)

4        Additionally, LB&I Examination personnel reviewed hard-copy documents left by

5    Charles Davis, one of the four individuals who had left the IRS before the FOIA requests were

6    received. (Goodson Decl. ¶ 31.)

7    *Electronic records on the on-site server*

8        One of the identified custodians, in a January 2012 email, conveyed that he did not

9    maintain any case-related files on his hard drive, but that all his case-related files were stored on

10   the "on-site server." (Goodson Decl. ¶ 26.) The on-site server is a server used by IRS examiners

11   but physically located at the office on Plaintiff's campus. (*Id.*) The on-site server also contained

12   case-related files from other Examination personnel assigned to the case. (*Id.*) By March 2012,

13   the on-site server files, consisting of 59.7 gigabytes, had been transferred to IRS IT in Memphis,

14   Tennessee for processing with the other collected ESI data. (*Id.* ¶ 27.)

15   *IRS Counsel Library document*

16       The FOIA requests had specifically referenced documents, including records related to

17   the IRS's engagement of outside consultants in the "files of the Chief Counsel's library."

18   (Goodson Decl. ¶ 36.) In September 2011, Ms. Barrett emailed the Chief Counsel library staff

19   for assistance in determining whether the library might have responsive documents. After

20   searching their records, the library provided Ms. Barrett with one responsive document. (*Id.*)

21   *Two custodians self-collected their own ESI*

22       When LB&I first received the two FOIA requests and circulated them among the most

23   likely custodians, it was assumed that search and collection of responsive records would be

24   conducted by the custodians themselves — the standard procedure for processing FOIA requests.

25   (Goodson Decl. ¶ 32.) The unusual decision to employ the EDR process and use IRS IT to

U.S. Department of Justice, Tax Division
Ben Franklin Station, P.O. Box 227
Washington, D.C. 20044
202-616-8994 (Phone)
202-514-6866 (Fax)

1   collect custodians' ESI during processing of an administrative FOIA was not made until about a

2   week after custodians had been notified about the requests. (*Id.*) Because the decision to use the

3   EDR process to collect and search ESI was not made immediately, some custodians had already

4   begun the time-consuming process of searching for their responsive electronic records. (*Id.*)

5   Some of these custodians were also managers who were only likely to have a few non-duplicate

6   responsive records. (*Id.*) It was decided that custodians would be given the option to opt out of

7   the EDR process if they had spent time conducting their own search and provided their ESI. (*Id.*)

8          Two custodians opted out of the ESI data capture process. One was Christopher Bello

9   who took the initiative to search his own records soon after being notified that he was a likely

10  custodian. (Goodson Decl. ¶ 33.) Mr. Bello's self-search was guided by the terms of the requests,

11  copies of which were provided to him, as well as his own knowledge of the records he personally

12  maintained. (*Id.*) Because it appeared reasonably likely to Ms. Barrett that Mr. Bello had

13  provided all of his responsive records, additional efforts to collect and search his ESI for a

14  second time through the EDR process were found to be an unnecessary use of IT resources. (*Id.*)

15         The second employee who opted out of the ESI process was Patricia Chaback. (Goodson

16  Decl. ¶ 34.) Unlike Mr. Bello, who provided the results of his search in October 2011, Ms.

17  Chaback did not notify the employees coordinating the ESI search until mid-December that she

18  might be eligible to opt out of the EDR process, and her name was included in the list of

19  custodians provided to IRS IT with the EDR memorandum submitted in December 2011. Ms.

20  Chaback's email files were collected under the EDR process and were searched as part of the

21  overall search of ESI for responsive records. (Goodson Decl. ¶ 35.) The other non-email

22  electronic files manually searched by Ms. Chaback were not collected and searched by IRS IT as

23  part of the EDR process.

24

25

### 3. This action

Plaintiff filed this action in October 2015. The Service re-reviewed those records that it had administratively released previously to Plaintiff either in full or in part. Ultimately, the Service has released 91,900 pages in full, 13,000 pages in part, and withheld 49,400 pages in full. (Declaration of Christopher Valvardi ¶ 5.)

## ARGUMENT

### I. Standard of review

Summary judgment is proper where "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

FOIA cases are "typically and appropriately decided on motions for summary judgment." *Negley v. F.B.I.*, 825 F. Supp. 2d 63, 68 (D.D.C. 2011). Generally, an agency must make two showings for the court to grant a motion for summary judgment in the agency's favor: first, that it has conducted an adequate reasonable search for documents through a reasonable methodology, and second, that any withheld documents or portions of documents fall under one of FOIA's exemptions from disclosure. *See id.* The Service bears the burden of showing that it met its dual burden, and the Court reviews the Service's determination de novo. 5 U.S.C. § 552(a)(4)(B); *see also*, *e.g.*, *Church of Scientology of Cal. v. IRS*, 792 F.2d 146, 150 (D.C. Cir. 1986).

The Service is entitled to summary judgment on Plaintiff's FOIA claims because it conducted a reasonable search for all records responsive to Plaintiff's request, and it has properly withheld 49,399 pages in full and withheld 12,985 pages in part. The Service supports this motion with declarations from its employees and various exhibits, including a *Vaughn* index.

IRS'S MOTION FOR SUMMARY JUDGMENT
(Case No. 2:15-cv-1605)
Page 9

U.S. Department of Justice, Tax Division
Ben Franklin Station, P.O. Box 227
Washington, D.C. 20044
202-616-8994 (Phone)
202-514-6866 (Fax)

1

## II.     The Service conducted a reasonable search for records responsive to Plaintiff's requests

2

3        To meet its obligations under the FOIA, the agency must establish that it conducted a

4   search "reasonably calculated to uncover all relevant documents." *Silbaugh v. Pizzella*, No. C18-

5   1182-JCC, 2019 WL 4392502, at *3 (W.D. Wash. Sept. 13, 2019) (citing *Zemansky v. E.P.A.*,

6   767 F.2d 569, 571 (9th Cir. 1985)). The reasonableness of the search is judged by the *process*,

7   and not the fruits of the search. *See Zaldivar v. United States Dep't of Veterans Affairs*, No.

8   CV1401493PHXDGCDMF, 2016 WL 4429657, at *3 (D. Ariz. Aug. 22, 2016), *aff'd*, 695 F.

9   App'x 319 (9th Cir. 2017). A search is not inadequate simply because it does not locate every

10  document a requester seeks. *Shores v. FBI*, 185 F. Supp. 2d 77, 82 (D.D.C. 2002). And a

11  requester cannot challenge the adequacy of a search by "purely speculative claims about the

12  existence and discoverability of other documents." *SafeCard Servs., Inc. v S.E.C.*, 926 F.2d

13  1197, 1200 (D.C. Cir. 1991) (citation omitted).

14       An agency may typically prove the reasonableness of its search through declarations from

15  responsible agency officials so long as those declarations are "reasonably detailed and not

16  controverted by contrary evidence or evidence of bad faith." *Moore v. Bush*, 601 F. Supp. 2d 6,

17  13 (D.D.C. 2009). Agency declarations are entitled to a presumption of good faith, and once the

18  agency submits declarations in support of its search, the burden shifts to the requester to

19  introduce evidence of bad faith to rebut the presumption. *SafeCard*, 926 F.2d at 1200.

20

21       Here, the facts about the searches conducted in response to Plaintiff's requests (which

22  sought documents relating to the Service's exam of Plaintiff and analysis under 26 U.S.C. § 482

23  of two cost sharing arrangements) are all established by the accompanying declaration of Cathy

24  Goodson. She and other attorneys at the Office of Chief Counsel LB&I Division in Seattle,

25

IRS'S MOTION FOR SUMMARY JUDGMENT
(Case No. 2:15-cv-1605)
Page 10

U.S. Department of Justice, Tax Division
Ben Franklin Station, P.O. Box 227
Washington, D.C. 20044
202-616-8994 (Phone)
202-514-6866 (Fax)

Washington, were involved with providing LB&I Examination with legal advice related to matters arising during the Service's exam of Plaintiff for the 2004 through 2006 tax years. Ms. Goodson assigned Shawn Barrett, one of the attorneys she supervised, to coordinate and advise on the Service's responses to the FOIA requests.  The Service first circulated the requests among the identified custodians in the two requests, and then expanded out its search to include additional custodians either thought to potentially possess responsive records or identified by those first custodians. In this way, the Service methodically fanned out its search requests to potential custodians.

Although the Service originally assumed that the search and collection of responsive records would be conducted by the custodians themselves, the agency decided to ask IRS IT to collect electronically stored information through the Electronic Discovery Request process. In this way, electronic data from 30 identified custodians were asked to be included in IRS IT's ESI data capture. This data capture generally copied documents stored on an employee's hard drive, any shared or external drives, and email stored in the Microsoft Outlook Exchange servers. Collection of electronically stored information was then filtered using a variety of keyword terms to segregate data responsive to Plaintiff's FOIA requests.

The Service also collected a variety of records that were not captured via IRS IT's EDR process, including 59.7 gigabytes of files from the on-site server, which was located on Plaintiff's campus. Additionally, because hard copy documents could not be collected by an electronic data capture process, all custodians were also required to do self-searches for responsive hard-copy document in their possession. The hard-copy documents were scanned and placed on a shared drive for review. The custodians were provided with copies of both FOIA requests so that they could make informed determinations of responsiveness. Further, because

IRS'S MOTION FOR SUMMARY JUDGMENT
(Case No. 2:15-cv-1605)
Page 11

U.S. Department of Justice, Tax Division
Ben Franklin Station, P.O. Box 227
Washington, D.C. 20044
202-616-8994 (Phone)
202-514-6866 (Fax)

Plaintiff's FOIA requests specifically referenced documents in "the files of the Chief Counsel's library", Ms. Barrett emailed library staff asking help to determine whether the library had responsive documents.

The Service's search efforts, as described above, meet the standard of being "reasonably calculated to uncover all relevant records" and made in good faith. *See Zemansky*, 767 F.2d at 571. The Service has thus met the FOIA requirements for an adequate search.

## III.   The records withheld by the Service are exempt from disclosure

FOIA requires that an agency release responsive information unless it is protected from disclosure by one or more of the Act's nine exemptions. *See* 5 U.S.C. § 552(b); *see also U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150–51 (1989). The agency bears the burden of showing that any withheld information falls into one or more of those exemptions. 5 U.S.C. § 552(a)(4)(B); *see also Nat. Res. Defense Council, Inc. v. Nuclear Regul. Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000).

The Service has submitted declarations and a *Vaughn* index of all the records withheld in part or in full based on FOIA exemptions 552(b)(2), (b)(3), (b)(4), (b)(5), (b)(7)(A), and (b)(7)(C) (Exemptions 2, 3, 4, 5, 7A and 7C). The index identifies each record, the statutory basis for withholding the record in whole or in part, and a categorical description of why each record or portion of a record is exempt.[2] The declaration provides more explanations for the basis

---

[2] "The adequacy of a *Vaughn* Index is not defined by its form, but rather its substance." *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 294–95 (D.D.C. 2007) (citation omitted). A *Vaughn* Index is not expected to be "a work of literature," and "agencies are not graded on the richness or evocativeness of their vocabularies," *Landmark Legal Found. v. IRS*, 267 F.3d 1132, 1138 (D.C.Cir.2001), nor on the length of their document descriptions, *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006). The relevant inquiry in analyzing the adequacy of a *Vaughn* Index is "whether the index provide[s] a relatively detailed justification, specifically identif[ies] the reasons why a particular exemption is relevant and correlat[es] those claims with the particular part of a withheld document to which they apply." *People for the Am. Way Found.*, 503 F. Supp. 2d at 295 (internal quotation marks and quotation omitted).

U.S. Department of Justice, Tax Division
Ben Franklin Station, P.O. Box 227
Washington, D.C. 20044
202-616-8994 (Phone)
202-514-6866 (Fax)

for withholding certain categories of documents, and singles out representative samples of each, and explains how the Service has attempted to release to Plaintiff every reasonably segregable non-exempt portion of every responsive record.

These categorical and representative descriptions, coupled with the detailed *Vaughn* index submitted with this Motion, establish that the Service properly withheld records under applicable exemptions.[3]

A.      **The Service has properly asserted Exemption 2**

Exemption 2 of the FOIA protects from disclosure matters "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 2 thus "applies to internal rules and practices exclusively connected with 'the selection, placement, and training of employees,' including 'hiring and firing.'" *Rojas v. Fed. Aviation Admin.*, 941 F.3d 392, 402 (9th Cir. 2019 (citing *Milner v. Dep't of Navy*, 562 U.S. 562, 569–70 (2011)).

The Service here has withheld information under Exemption 2 found in internal memoranda, forms, and workpapers. As described more fully in the declaration of Christopher Valvardi and accompanying *Vaughn* index, the information relates solely to agency personnel matters, and includes: security-related forms and communications used when hiring employees or contractors; and employee workloads forms and performance records used for determining work assignments. (*See* Valvardi Decl. ¶ 10–12.) The Service has accordingly properly withheld records in full and in part under Exemption 2.

---

[3] Given the size of the *Vaughn* index, the Service, at the request of the Court, is willing to provide a copy of the index in native format for ease of accessibility to both the Court and Plaintiff.

U.S. Department of Justice, Tax Division
Ben Franklin Station, P.O. Box 227
Washington, D.C. 20044
202-616-8994 (Phone)
202-514-6866 (Fax)

**B.     The Service has properly asserted Exemption 3 to protect the return information of third parties under § 6103(a) and treaty information under § 6105**

FOIA Exemption 3 permits an agency to withhold information that is specifically exempted from disclosure by statute. 5 U.S.C. § 552(b)(3). Exemption 3 is unqualified: if the Court determines that such a qualifying statute exists, material within the statute's scope must be withheld. *Goland v. C.I.A.*, 607 F.2d 339, 351 (D.C. Cir. 1978). Sections 6103 and 6105 of Title 26 are exempting statutes under FOIA Exemption 3, and thus records protected under §§ 6103 and 6105 are exempt from disclosure. *Chamberlain v. Kurtz*, 444 U.S. 842 (1979); *Tax Analysts v. IRS*, 217 F. Supp. 2d 23, 26 (D.D.C. 2002).

*Along with § 6103(a)*

Section 6103(a) provides that tax "returns" and "return information" are to be kept confidential, unless disclosure is permitted by Title 26. *Church of Scientology of California v. IRS*, 484 U.S. 9 (1987). "Return information" is defined and construed broadly, and includes practically any data "received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence of, or possible existence of liability (or the amount thereof) of any person[.]" 26 U.S.C. § 6103(b)(2)(A). Third parties may not obtain such "return information" of another person without that person's written authorization. *See* 26 U.S.C. § 6103(c), 26 C.F.R. § 601.702(c)(4)(i)(E) & (c)(5)(iii). A person includes individuals, entities, and corporations. *See* 26 U.S.C. § 7701(a)(1).

The Service here has withheld information under § 6103(a). All of this information consists of the tax information of third parties, including: names, taxpayer identification numbers, or other identifying information;; the fact of whether a particular taxpayer's return is being examined; and descriptions of examination or collection activity. (*See* Valvardi Decl.

U.S. Department of Justice, Tax Division
Ben Franklin Station, P.O. Box 227
Washington, D.C. 20044
202-616-8994 (Phone)
202-514-6866 (Fax)

¶ 13–16.) As stated in more detail in the Valvardi Declaration and accompanying *Vaughn* index, the Service has accordingly properly withheld records in full and in part under Exemption 3 along with § 6103(a).

### Along with § 6105

Section 6105(a) states that "Tax convention information shall not be disclosed." "Tax convention information" includes information exchanged pursuant to a tax convention which is treated as confidential or secret under the tax convention. 26 U.S.C. § 6105(c)(1)(E).[4]

The Service has withheld one line on one page because it contained tax convention information consisting of information that was exchanged pursuant to a tax convention. (Valvardi Decl. ¶ 17.) This line has also been withheld under § 6103(a) as being the tax information of a third party. (*Id.* ¶ 18.) The Service has accordingly properly withheld this line under Exemption 3 along with § 6105.

### C. The Service is properly withholding the commercial and financial information of various contractors under Exemption 4

Along with protecting "trade secrets," Exemption 4 of the FOIA protects from disclosure (1) "commercial or financial information" that is (2) "obtained from a person" and which is (3) "privileged or confidential." 5 U.S.C. § 552(b)(4). The redacted information here includes information provided by various contractors before, during, or after the contract such as contractors' proposed, prospective, or actual billing schedules, as well as information on invoice documents reflecting amounts billed, hours worked, and bank account numbers. (Valvardi Decl. ¶¶ 20–21.) This information, which is described more fully in the Valvardi declaration and accompanying *Vaughn* index, satisfies all three requirements of Exemption 4.

---

[4]

IRS'S MOTION FOR SUMMARY JUDGMENT
(Case No. 2:15-cv-1605)
Page 15

U.S. Department of Justice, Tax Division
Ben Franklin Station, P.O. Box 227
Washington, D.C. 20044
202-616-8994 (Phone)
202-514-6866 (Fax)

The withheld information is "commercial or financial information" under that latter phrase's ordinary meaning. *See Pub. Citizen Health Res. Group v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983) ("Records that actually reveal basic commercial operations, . . . or relate to the income-producing aspects of a business," fall within the scope of "commercial" information). The withheld information here was also "obtained from a person" because it was obtained from various contractors. *See, e.g.*, *Nadler v. FDIC*, 92 F.3d 93, 95 (2d Cir. 1996) (stating that term "person" includes an individual, partnership, corporation, association, or public or private organization other than an agency) (internal quotation omitted). Finally, the withheld information is "confidential," because "when the government requires a private party to submit information as a condition of doing business with the government, . . . the information is 'confidential or privileged' under Exemption 4 . . ." *Judicial Watch, Inc. v. Expo-Imp. Bank*, 108 F. Supp. 2d 19, 28 (D.D.C. 2000).

The Service has thus properly withheld records in full and in part under Exemption 4.

### D.    The Service has properly asserted Exemption 5

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). As the language suggests, exemption 5 incorporates those privileges which the government enjoys in pretrial discovery under relevant statutes and case law. *See United States v. Weber Aircraft Corp.*, 465 U.S. 792, 799 (1984). This exemption incorporates the governmental deliberative process privilege, the attorney-client privilege and the work-product doctrine. *See Tax Analysts v. IRS*, 294 F.3d 71, 76 (D.C. Cir. 2002). Here, the Service has withheld records under all three of these common law privileges.

IRS'S MOTION FOR SUMMARY JUDGMENT
(Case No. 2:15-cv-1605)
Page 16

U.S. Department of Justice, Tax Division
Ben Franklin Station, P.O. Box 227
Washington, D.C. 20044
202-616-8994 (Phone)
202-514-6866 (Fax)

### *The Deliberative Process Privilege*

The deliberative process privilege protects "documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Sears, Roebuck & Co.*, 421 U.S. at 150 (*quoting Carl Zeiss Stiftung v. V.E.B. Carl Zeisee, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966)). In determining whether the governmental deliberative process privilege protects information, the record or portion of a record must be both pre-decisional and deliberative. *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017).

Pre-decisional means prior in time to the adoption of an agency policy or a final agency decision. *Judicial Watch, Inc.*, 847 F.3d at 739; *Abtew v. U.S. Dept. of Homeland Sec.*, 808 F.3d 895, 899 (D.C. Cir. 2015). A record is "deliberative in nature" where it contains subjective information reflecting the author's personal opinions before agency adoption of a policy, or reflecting the "give-and-take" within the agency leading up to a decision. *Judicial Watch, Inc.*, 847 F.3d at 739; *Hamilton Secs. Group, Inc. v. HUD*, 106 F. Supp. 2d 23, 31 (D.D.C. 2000). Disclosing such documents could inhibit agency employees' "frank discussion of legal or policy matters" leading to weaker decisions and policies. *Sears, Roebuck & Co.*, 421 U.S. at 150; *see also Tax Analysts*, 294 F.3d at 80.

The Service here withheld deliberations on the ongoing examination to determine the proper tax liabilities of Plaintiff. As discussed in the Valvardi Declaration, civil tax examinations involve a series of investigatory, fact-gathering, and deliberative steps that precede the actual final decision. (Valvardi Decl. ¶¶ 32–35.) During examination, agency employees analyze the returns and return information provided by the taxpayer under examination, and compare them with information gathered from related parties and third parties. (*Id.* ¶ 33.) Information for the

IRS'S MOTION FOR SUMMARY JUDGMENT
(Case No. 2:15-cv-1605)
Page 17

U.S. Department of Justice, Tax Division
Ben Franklin Station, P.O. Box 227
Washington, D.C. 20044
202-616-8994 (Phone)
202-514-6866 (Fax)

examination is gathered mainly through document requests, summons, and interviews with the

taxpayer, its employees, and third parties. (*Id.*) The information is analyzed by Service

employees who are advised throughout the process by Chief Counsel attorneys, to decide what

enforcement action, if any, should be taken. (*Id.*)

Because of the complexity and significance of the issues involved, the Service and Chief

Counsel employees involved in the examination generated many draft documents and items of

communication analyzing the various legal and procedural issues involved in the examination.

(Valvardi Decl. ¶ 35.) Some aspects of the examination required that the Service make a

particular administrative determination before conducting more case activity. (*Id.*) For example,

determinations needed to be made as to the language in final drafts of certain documents and

workpapers, such as information document requests, summons, or reports, before those

documents could be used to obtain further information or analysis that would ultimately

contribute to the correct adjustments to Plaintiff's returns. (*Id.*) Each of the many smaller

determinations undertaken during the examination process will ultimately contribute to the set of

facts used to determine the amount of tax, penalty, or other imposition or offense for which

plaintiffs may or may not be liable. (*Id.*)

The Service has withheld certain records in full based on the deliberative process

privilege because they are drafts that reflect the thought processes and recommendations of the

Service employees who worked on Plaintiff's examination as to many of the above deliberative

and predecisional actions. (Valvardi Decl. ¶ 37.) Indeed, drafts are the classic "predecisional

documents." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

The withheld drafts documents were subject to final review by a government employee before

IRS'S MOTION FOR SUMMARY JUDGMENT
(Case No. 2:15-cv-1605)
Page 18

U.S. Department of Justice, Tax Division
Ben Franklin Station, P.O. Box 227
Washington, D.C. 20044
202-616-8994 (Phone)
202-514-6866 (Fax)

mailing, transmittal, filing, use in an interview, or other use, and included draft workpapers, draft information document requests, and draft memoranda. (Valvardi Decl. ¶ 37.)

The Service has similarly withheld other information including email discussions and non-draft memorandum under the deliberative process privilege. The withheld information about the ongoing audit are predecisional because they precede enforcement determinations that are yet to be final. (Valvardi Decl. ¶¶ 33–35.) The withheld information about the ongoing audit is also deliberative because it discusses or proposes options for reaching those enforcement determinations.(*Id.*)

For these reasons, the Service properly withheld records under the deliberative process privilege.

### The Attorney-Client Privilege

The attorney-client privilege, as incorporated into Exemption 5, protects from disclosure "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data Central, Inc. v. Dep't of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977). Thus, the attorney-client privilege applies to a communication where: (1) the communication stems from an attorney-client relationship; (2) the communication is maintained as confidential between the attorney and the client; and (3) the communication, if from attorney to client, is based on confidential information supplied to the attorney by the client. *See Brinton v. Dep't of State*, 636 F.2d 600, 603 (D.C. Cir. 1980).

As explained more fully in the Valvardi declaration and accompanying *Vaughn* index, much of the information withheld under this privilege contain communications: (1) among government attorneys reflecting the facts provided by the Service in order to obtain advice, or reflect the advice being developed by government attorneys to benefit the agency; (2) among

IRS'S MOTION FOR SUMMARY JUDGMENT
(Case No. 2:15-cv-1605)
Page 19

U.S. Department of Justice, Tax Division
Ben Franklin Station, P.O. Box 227
Washington, D.C. 20044
202-616-8994 (Phone)
202-514-6866 (Fax)

Chief Counsel attorneys relating to legal advice requested on behalf of the Service; and

(3) among Service employees and examiners and Chief Counsel for legal advice on Plaintiff's

examination. (Valvardi Decl. ¶¶ 23–26.) The advice sought from and provided by Chief Counsel

included: how documents should be drafted, how questions and communications with Plaintiff

should be formulated, and how research should be conducted to enhance the factual basis for

decisions. (*Id.* ¶ 27.)

Thus, the withheld communications are confidential, based on information provided by

the client to its attorneys, and are to obtain or give legal advice. They are within the attorney-

client privilege.

### The Work-Product Doctrine

This doctrine protects, at a minimum, memoranda prepared by a government attorney in

anticipation of litigation and setting forth the attorney's view of the case and litigation strategy.

*Sears, Roebuck & Co.*, 421 U.S. at 154; *see also, Tax Analysts v. IRS*, 152 F. Supp. 2d 1, 18

(D.D.C. 2001). Exemption 5, incorporating the work-product doctrine, authorizes withholding no

matter if the applicable material is deliberative or factual. *Martin v. Office of Special Counsel,

Merit Sys. Prot. Bd.*, 819 F.2d 1181, 1185–86 (D.C. Cir. 1987).

The IRS has withheld many records that contain the thoughts, mental impressions, and

legal theories of its Counsel in anticipation of an assessment of tax and litigation with Plaintiff,

including (1)  reasonably foreseeable U.S. Tax Court or U.S. District Court litigation involving

Plaintiff's examination or related tax enforcement matters given the disagreements between

Plaintiff and the Service and (2) tax cases involving taxpayers other than Plaintiff which were

anticipated or currently being litigated as indicated by the fact that they were being discussed in

connection with issues expected to be litigated by Microsoft. (Valvardi Decl. ¶¶ 42–43.) The

U.S. Department of Justice, Tax Division
Ben Franklin Station, P.O. Box 227
Washington, D.C. 20044
202-616-8994 (Phone)
202-514-6866 (Fax)

documents for which the Service asserts attorney work-product doctrine were all prepared by a government attorney, or by a Service employee under supervision of a government attorney, as shown in the *Vaughn* Index or on the portions of the records released to Plaintiff. (*Id.* ¶¶ 40–41.)

The withheld information is thus protected as attorney work product.

### E.     The Service has properly asserted Exemption 6

FOIA Exemption 6 exempts from disclosure personnel, medical, and similar files where the disclosure of such information would constitute a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). In determining whether Exemption 6 applies, the court consider two factors: (1) whether the information is in a personnel, medical, or "similar" agency file; and (2) whether a countervailing public interest in the record outweighs in the individual's privacy interest. *Multi Ag Media LLC v. U.S.D.A.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008). The Supreme Court has broadly interpreted "similar files" as any information that "applies to a particular person." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982).

Courts have found that individuals have a sufficient interest in the privacy of their names, addresses, finances, and so on, to justify withholding under Exemption 6. *See Multi Ag Media*, 515 F.3d at 1230. Meanwhile, the public's interest is limited to the statutory purpose of FOIA — to "shed light on an agency's performance of its statutory duties." *See DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989).

Here, the information withheld under this exemption includes personal phone numbers; personal email addresses; home addresses; details of personal matters pertaining to agency employees such as travel plans, and background investigation information; and credit card information. (Valvardi Decl. ¶ 48.) Disclosure of this information would be a clear invasion of privacy, and would also do nothing to advance the interest of the public in learning more about

the agency's performance of its duties. *See Multi Ag Media*, 515 F.3d at 1230; *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. at 773; *(Id.* ¶ 46.) Thus, all of this information was properly withheld and segregated under Exemption 6.

### F.    The Service has properly asserted the Exemptions under the applicable subsections of § 552(b)(7)

FOIA Exemption 7 exempts from disclosure "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). The threshold determination under Exemption 7 is whether the documents at issue were (a) compiled by a law enforcement agency; and (b) compiled for a law enforcement purpose(s). *Abramson v. FBI*, 456 U.S. 615, 622 (1982).

The Service is a law enforcement agency for purposes of Exemption 7. *Church of Scientology v. IRS*, 995 F.2d 916, 919 (9th Cir. 1993); *Keys v. DOJ*, 830 F.2d 337, 340 (D.C. Cir. 1987). Second, courts have consistently held that records compiled for civil or criminal investigations by the Service are "records or information compiled for law enforcement purposes." *Tax Analysts*, 294 F.3d at 77. As one court has observed, "A tax audit is certainly performed in aid of enforcement of our tax laws, civil and criminal, and there should be no distinction under FOIA Exemption 7 between monitoring activities and prosecutorial activities, both of which serve law enforcement purposes." *B. & C. Tire Co. v. IRS*, 376 F. Supp. 708, 713 n.11 (N.D. Ala. 1974).

### *Exemption 7(A)*

FOIA Exemption 7(A) applies to information whose disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). It is properly invoked when release of a document would hinder an agency's ability to control or shape an investigation. *Swan v. SEC*, 96 F.3d 498, 500 (D.C. Cir. 1996).

IRS'S MOTION FOR SUMMARY JUDGMENT
(Case No. 2:15-cv-1605)
Page 22

U.S. Department of Justice, Tax Division
Ben Franklin Station, P.O. Box 227
Washington, D.C. 20044
202-616-8994 (Phone)
202-514-6866 (Fax)

Under Exemption 7(A), the Service must show that records could reasonably be expected to interfere with enforcement proceedings by showing that (1) law enforcement proceeding is pending or prospective, and (2) release of information about it could reasonably be expected to cause articulable harm. *See, e.g.*, *NLRB v. Robins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978) (holding that government must show how records "would interfere with a pending enforcement proceeding"); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1113–14 (D.C. Cir. 2007) (discussing dual elements necessary to invoke Exemption 7(A): reasonably anticipated law enforcement proceeding and harm if information released).

A court may make generic determinations that disclosure of certain types of investigatory records would generally interfere with certain kinds of enforcement proceedings. *Robbins Tire & Rubber*, 437 U.S. at 223–24; *see also Spannaus v. DOJ*, 813 F.2d 1285, 1288 (4th Cir. 1987). Records may be withheld categorically or individually from disclosure under FOIA Exemption 7(A). *DOJ v. Reporters' Comm. for Freedom of the Press*, 489 U.S. 749 (1989) (where the Court found that records could be categorically withheld under FOIA Exemption 7(C), it relied in part on cases in which records were categorically withheld under 7(A)).

In determining whether disclosure of a category of records would "interfere" with enforcement proceedings, Courts have also interpreted "interference" broadly. For example, in *Robbins Tire*, the Supreme Court found that permitting a plaintiff earlier and greater access to documents or other information collected by the agency than it would normally be entitled, constitutes the type of interference Exemption 7(A) was enacted to prevent. *Robbins Tire & Rubber*, 437 U.S. at 236. Other courts have found that interference with enforcement proceedings occurs by revealing the identities of potential witnesses, the nature, scope, direction, and limits of the investigation, the transactions being investigated, information on third-party

contacts, the evidence obtained to date, the reliance the agency places on the evidence, and the Government's strategies and theories. *Curran v. DOJ*, 813 F.2d 473, 474 (1st Cir. 1987); *Barney v. IRS*, 618 F.2d 1268, 1273 (8th Cir. 1980). In upholding this exemption, the cases add that FOIA was not intended to be used as a discovery tool. *See United States v. Murdock*, 548 F.2d 599, 602 (5th Cir. 1977).

Here, the material withheld by the Service was compiled for ongoing civil examinations, and include information on the agency's focus or interest in specific facts, transactions, individuals, evidence, or claims which would prematurely disclose the nature, scope, direction, and strategy of the audit. Disclosure of this information would harm the Service's enforcement activities, and so this material was properly withheld. (Valvardi Decl. ¶¶ 50–52.)

### Exemption 7(C)

FOIA Exemption 7(C) authorizes the withholding of information compiled for law enforcement purposes, the release of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. §552(b)(7)(C). In applying the personal privacy exemptions under FOIA, the courts must balance the private and public interests involved. *See, e.g.*, *Halloran v. Veterans Admin.*, 874 F.2d 315 (5th Cir. 1989)

The Supreme Court has held that the withholding of a document under FOIA Exemption 7(C) turns on the nature of the requested document and its relationship to the purpose under the FOIA, which is to open agency action to the light of public scrutiny. *See Reporters Comm.*, 489 U.S. at 772. The statutory purpose of the FOIA is not "fostered by disclosure of information about private citizens that is accumulated in various government files but reveals little or nothing about an agency's own conduct." *Id.* at 773. Not only must the requester state a legitimate public

IRS'S MOTION FOR SUMMARY JUDGMENT
(Case No. 2:15-cv-1605)
Page 24

U.S. Department of Justice, Tax Division
Ben Franklin Station, P.O. Box 227
Washington, D.C. 20044
202-616-8994 (Phone)
202-514-6866 (Fax)

interest, but he must show that the public interest in disclosure is sufficiently compelling to outweigh strong privacy interests. *Id.* at 775.

The Court is "not required to determine with absolute certainty the effects of releasing the information in controversy." *Halloran*, 874 F.2d. at 320. Instead, "[E]xemption 7(C) requires only that we find that the disclosure of the records or information 'could reasonably be expected to constitute' an unwarranted invasion of privacy." *Id.*

Here, the information withheld under this exemption includes family news and personal contact information and travel plans of employees. Disclosure of this information would constitute an invasion of privacy, and there is no countervailing public interest in this information, much less a "sufficiently compelling one." *Reporters Comm.*, 489 U.S. at 775; (Valvardi Decl. ¶¶ 46–47.). For these reasons, this information was properly withheld under exemption 7(C).

### *Exemption 7(E)*

Exemption 7(E) "shields law enforcement records that, if produced, 'would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.'" *Stein v. DOJ*, 134 F. Supp. 3d 457, 473 (D.D.C. 2015) (citing 5 U.S.C. § 552(b)(7)(E)). The Service "has broad authority. . . to withhold records or information based upon Section 552(b)(7)(E)." *George v. IRS*, No. C05-0955, 2007 WL 1450309, at *7 (N.D. Cal. May 14, 2007). "The exemption allows for withholding records or information not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a

U.S. Department of Justice, Tax Division
Ben Franklin Station, P.O. Box 227
Washington, D.C. 20044
202-616-8994 (Phone)
202-514-6866 (Fax)

reasonably expected risk, but for the chance of a reasonably expected risk." *Stein*, 134 F. Supp. 3d at 474 (citing *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)).

Here, the Service applied this exemption to withhold phone number and passcodes for internal conference lines and passwords for encrypted or protected confidential computer files. (Valvardi Decl. ¶ 60.) Revealing this information would have no benefit, and would only increase the chance of the phone numbers' and codes' misuse. (Valvardi Decl. ¶¶ 54–55.) Thus, such information is protected from disclosure under Exemption 7(E).

## IV.   The Service properly segregated the exempt and non-exempt material

Under the FOIA, any "reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). However, the Supreme Court has noted that "return information," as defined under 26 U.S.C. § 6103(b)(2)(A), cannot simply be segregated and redacted. *See Church of Scientology of Cal*, 484 U.S. at 18.

As set forth in the Valvardi Declaration, filed herewith, the Service conducted a segregability analysis for each record in the *Vaughn* index. (Valvardi Decl. ¶ 4). The Service indicated whether each record was withheld in full or in part pursuant to each exemption asserted. For records withheld in full, the index provides sufficient information to establish that either there is no information to segregate or that segregation is not feasible. Therefore, the Service properly segregated the exempts and non-exempt portions of records responsive to the Plaintiff's requests.

U.S. Department of Justice, Tax Division
Ben Franklin Station, P.O. Box 227
Washington, D.C. 20044
202-616-8994 (Phone)
202-514-6866 (Fax)

1

**V.    Plaintiff's APA claim fails because the FOIA provides Plaintiff with an "adequate remedy"**

2

The District Court has jurisdiction over the APA claim only if "there is no other adequate

3

remedy in a court." 5 U.S.C. § 704. But the FOIA provides such an "adequate remedy" thereby

4

precluding judicial review under the APA. *Citizens for Responsibility and Ethics in Washington*

5

*('CREW') v. U.S. Dep't of Justice*, 846 F.3d 1235, 1245-46 (D.C. Cir. 2017).

6

Plaintiff's second claim alleges a violation of the APA. (*See* Complaint, ¶¶23–26). But

7

Plaintiff's APA claim receives through its FOIA claim the relief it seeks through its APA claim.

8

The only unlawful agency action alleged under the APA is the Service's alleged failure to

9

comply with the FOIA. *Id.* Plaintiff does not request any specific additional relief under the

10

APA. *Id.*, Prayer for Relief.

11

**CONCLUSION**

12

For all these reasons, the Service respectfully requests that the Court enter summary

13

judgment in its favor.

14

15

16

17

**U.S. DEPARTMENT OF JUSTICE**

18

By:    *s/ Stephen S. Ho*

19

Stephen S. Ho
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 227
Washington, DC 20044
Tel:  (202) 616-8994
Fax:  (202) 514-6866
Email:  stephen.s.ho@usdoj.gov

20

21

22

23

*Attorney for Defendant Internal Revenue Service*

24

25

IRS'S MOTION FOR SUMMARY JUDGMENT
(Case No. 2:15-cv-1605)
Page 27

U.S. Department of Justice, Tax Division
Ben Franklin Station, P.O. Box 227
Washington, D.C. 20044
202-616-8994 (Phone)
202-514-6866 (Fax)

**CERTIFICATE OF SERVICE**

I certify that I served a true and correct copy of this MOTION FOR SUMMARY

JUDGMENT via the Court's electronic case filing system on April 29, 2022.

*/s Stephen S. Ho*

STEPHEN S. HO

U.S. Department of Justice, Tax Division
Ben Franklin Station, P.O. Box 227
Washington, D.C. 20044
202-616-8994 (Phone)
202-514-6866 (Fax)