THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION,

               Plaintiff,

vs.

INTERNAL REVENUE SERVICE,

               Defendant.

NO. 2:15-cv-01605-RSM

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOTE ON MOTION CALENDAR:
July 29, 2022

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

## PRELIMINARY STATEMENT

Congress enacted the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") to provide transparency into government operations and activities. *See Judicial Watch, Inc. v. Fed. Housing Fin. Agency*, 646 F.3d 924, 927-28 (D.C. Cir. 2011). The FOIA accordingly imposes "a presumption of disclosure." *Frazee v. U.S. Forest Serv.*, 97 F.3d 367, 370 (9th Cir. 1996).

Defendant, however, has gone to extraordinary lengths to keep its agency records in the dark, representing that it withheld 49,400 pages in whole and 13,000 pages in part.[1] Defendant's search efforts were not "reasonably calculated to uncover all relevant documents" as required by the FOIA. *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985). Moreover, Defendant's *Vaughn* index is vague, incomplete, and legally insufficient to support Defendant's exemption claims.[2] Defendant makes multiple exemption claims that are improper or unsupported, or that extend narrow exceptions to disclosure well beyond their applicability. Defendant's Motion for Summary Judgment should be denied.

## STATEMENT OF FACTS

In 2007, Defendant began an examination of Plaintiff's 2004 through 2006 years. *See* No. 2:15-cv-369, Dkt. 63-9 (Choi Decl., at ¶ 3). It later expanded to include Plaintiff's 2007 through 2009 years. Declaration of Daniel A. Rosen, Ex. 1 (Bernard Decl., Exhibit F at 4). From 2007 to October 2014, Defendant issued to Plaintiff over 200 information document requests ("IDRs") and interviewed numerous Plaintiff employees. *Id.*, Ex. 3 (Summons Enforcement Order). The audit is ongoing. Dkt. 51-1 (Goodson Decl., at ¶ 11).

### I.    FOIA Requests

On August 16, 2011, Plaintiff filed two FOIA requests with Defendant. *See* Dkt. 51-1

---

[1] *See* Dkt. 51 (Mot. for Summ. J., at 2). Defendant represents that they released 91,900 pages. Plaintiff believes this number is closer to 26,814 pages.

[2] *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). "A *Vaughn* index is a submission that identif[ies] the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption." *Transgender Law Ctr. v. Immigration & Customs Enf't*, 33 F.4th 1186, 1196 (9th Cir. 2022).

PLTF'S BRIEF IN OPPOSITION TO DEF'S
MOTION FOR SUMMARY JUDGMENT – Page 1
(Case No. 2:15-cv-01605-RSM)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1  (Goodson Decl., at ¶¶ 4, 7).  The first FOIA request sought documents related to Defendant's

2  examination and 26 U.S.C. § 482 analysis of a cost-sharing buy-in under Plaintiff's Technology

3  License Agreement dated April 3, 2004, covering the Asia, Southeast Asia, and South Pacific

4  region.  *See* Dkt. 51-1 (Goodson Decl., at ¶¶ 4, 5).  The second FOIA request sought documents

5  related to Defendant's examination and 26 U.S.C. § 482 analysis of a cost-sharing buy-in under

6  Plaintiff's Technology License Agreement dated July 1, 2005, covering the Americas region.  *See*

7  Dkt. 51-1 (Goodson Decl., at ¶¶ 7, 8).  On October 7, 2015, Defendant filed a complaint in this

8  Court, seeking declaratory and injunctive relief related to these FOIA requests.  *See* Dkt. 1

9  (Compl.).

**STANDARD OF REVIEW**

11      The FOIA expressly places the burden on the agency to support, beyond a material doubt,

12  its handling of a FOIA request.  *Transgender Law Ctr.*, 33 F.4th at 1195 ("[W]e conclude that,

13  under FOIA, agencies bear the burden of demonstrating the adequacy of their search beyond a

14  material doubt.").  In FOIA cases, summary judgment is only appropriate where the "agency has

15  met its burden of proving that it fully discharged its obligations under [the] FOIA" and "the agency

16  has proven that the information that it did not disclose falls within one of the nine FOIA

17  exemptions." *Los Angeles Times Commc'ns, LLC* v. *Dep't of Army,* 442 F. Supp. 2d 880, 893-94

18  (C.D. Cal. 2006).  Defendant bears the burden of proof on both inquiries, while all of "the

19  underlying facts and possible inferences are construed in favor of the FOIA requester." *Id.*

**ARGUMENT**

21      Defendant's FOIA response is inadequate and its search was not reasonably calculated to

22  uncover all relevant documents.  Defendant also applied inconsistent search conventions,

23  implementing disparate search standards for similarly situated custodians without reasonable

24  explanation.  Moreover, its *Vaughn* index fails to satisfy minimum content requirements.  Plaintiff

25  cannot evaluate the merits of many claimed exemptions from the *Vaughn* index's entries.

26  Numerous entries provide insufficient information to support claimed exemptions, while others

PLTF'S BRIEF IN OPPOSITION TO DEF'S
MOTION FOR SUMMARY JUDGMENT – Page 2
(Case No. 2:15-cv-01605-RSM)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

conflict with Defendant's previous representations to this Court.  Defendant has failed to carry its burden of proof, and it follows that its Motion for Summary Judgment should be denied.

## I. Defendant's Search Was Not Reasonably Calculated to Uncover All Relevant Records.

The FOIA requires a responding agency to produce "agency records" upon request, 5 U.S.C. § 552(b), and to "demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Zemansky*, 767 F.2d at 571.  Defendant's search failed to satisfy these requirements.

Defendant's actual search for responsive documents was also deficient and inconsistent. For at least one custodian, Defendant failed to review any electronically stored information ("ESI") and allowed two custodians to "opt out" of the process.  Dkt. 51-1 (Goodson Decl., at ¶¶ 33, 34). Moreover, Defendant also apparently disregarded or discarded the ESI of custodians who left Defendant's employment prior to Plaintiff's FOIA requests, resorting to "previous" Electronic Discovery Requests ("EDRs") to collect potentially responsive records.  Dkt. 51-1 (Goodson Decl., at ¶ 22).  Defendant's efforts provide no assurance that Defendant adequately captured the relevant custodians' responsive records.

### A. Defendant's Declaration Inadequately Describes the Agency's Search Process.

Agencies may show that they "conducted a search reasonably calculated to uncover all relevant documents" through "reasonably detailed, nonconclusory affidavits submitted in good faith." *Zemansky*, 767 F.2d at 571.  Defendant's declaration is, however, largely inadequate.  It describes vague and disjointed search sequences with unexplained contextual gaps.  Moreover, it reveals that Defendant applied inconsistent search conventions, implementing disparate search standards for similarly situated custodians without reasonable explanation.  As a result, Defendant's search effort does not satisfy the FOIA's requirements.

PLTF'S BRIEF IN OPPOSITION TO DEF'S
MOTION FOR SUMMARY JUDGMENT – Page 3
(Case No. 2:15-cv-01605-RSM)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1
2

**1.    Defendant's Declaration Does Not Explain, with Reasonable Specificity, the Efforts it Undertook to Search for Responsive Documents.**

3    Declarations sufficient to support an agency's motion for summary judgment must at a

4    minimum describe "what records were searched, by whom, and through what process." *Steinberg*

5    *v. DOJ*, 23 F.3d 548, 551-52 (D.C. Cir. 1994).  However, to satisfy the FOIA's requirements,

6    Defendant must—at a minimum—"aver that it has searched all files likely to contain relevant

7    documents." *Am. Immigration Council v. Dep't of Homeland Sec.*, 21 F. Supp. 3d 60, 71 (D.D.C.

8    2014).  A "reasonably detailed affidavit . . . averring that all files likely to contain responsive

9    materials . . . were searched[] is necessary to afford a FOIA requester an opportunity to challenge

10   the adequacy of the search and to allow the district court to determine if the search was adequate

11   in order to grant summary judgment." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir.

12   1990).

13   Defendant's sole declaration describing its search efforts inadequately details its search

14   process, including its ESI collection and review process.  For example, Defendant does not address

15   what, if any, efforts it undertook to determine whether relevant custodians' ESI remained

16   available.  Specifically, Defendant's declaration indicates that four individuals named in the FOIA

17   requests—Charles Davis, Barbara Leonard, Robert Geraghty, and Kenneth Christman—had left

18   the IRS or Counsel prior to the FOIA requests.  Dkt. 51-1 (Goodson Decl., at ¶ 22).  Defendant

19   states that "IRS IT found ESI for only three of these custodians" and that the "three custodians'

20   files were included in the searched database to the extent that other custodians had duplicate copies

21   of the three custodians' electronic records." Dkt. 51-1 (Goodson Decl., at ¶ 22.)  It is unclear why

22   Defendant's IT function only found ESI for three of the custodians from duplicate ESI of other

23   custodians.  Defendant's declaration provides no substantive description of the search process or

24
25
26

PLTF'S BRIEF IN OPPOSITION TO DEF'S
MOTION FOR SUMMARY JUDGMENT – Page 4
(Case No. 2:15-cv-01605-RSM)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1    any explanation for those missing files.  And, presumably, some of the ESI would be in the

2    employees' personally-assigned network locations or on Defendant's enterprise email server.[3]

3            Defendant also engaged in an overly-"broad culling method[]," eliminating from its review

4    potentially responsive records based not on the records' substance, but on Defendant's electronic

5    data folder conventions.  Dkt. 51-1 (Goodson Decl., at ¶¶ 44, 45).  Defendant automatically treated

6    potentially responsive records as nonresponsive if custodians maintained the records in folders

7    with names identified as relating to other taxpayers or to "domestic or other unrelated issues."  *Id.*

8    (Goodson Decl., at ¶ 44).  Defendant's declaration does not describe any process for concluding

9    that responsive records were not contained in these excluded folders.  Moreover, Defendant had

10   *already* performed keyword searches on those records and removed records that did not have

11   keywords in the subject, body, or attachments.  *Id.* (Goodson Decl., at ¶¶ 42-44).  Defendant's

12   "broad culling method[]" was, therefore, not reasonably tailored to ensure that responsive records

13   were not excluded.

14           Accordingly, Defendant cannot affirm that it searched all locations likely to have

15   responsive records.  "In the absence of an affidavit containing the specific declaration that the

16   agency searched *all* locations likely to contain responsive documents, the Court must conclude

17   that a genuine issue of material fact remains as to whether the agency conducted an adequate

18   search."  *Wisdom v. U.S. Tr. Program*, 232 F. Supp. 3d 97, 117 (D.D.C. 2017).

19       **B.    Defendant Employed an Inexplicably Inconsistent Search Process.**

20           **1.    Defendant Permitted Certain Custodians to Opt-Out of the ESI Data
                     Capture Process, but Treated Those Similarly-Situated Custodians
21                   Differently.**

22           "[T]he reasonableness of an agency's search [is] based on what the agency knew at its

23   conclusion rather than what the agency speculated at its inception."  *Campbell v. DOJ*, 164 F.3d

---

24   [3] *See, e.g.,* Dkt. 51-1 (Goodson Decl., at ¶ 21) ("When implementing an EDR, the IT group copies files stored on an
     employee's hard drive, any shared or external drives, and email stored in the Microsoft Outlook Exchange servers.");
25   *see also* No. 2:15-cv-369, Dkt. 63-7 (2d Valvardi Decl., at ¶¶ 62, 66-68) (indicating that, in general, Defendant can
     collect ESI from the employee's: (1) hard drive; (2) personally-assigned network location, or "drive," to which only
26   that employee and IT staff would have access; and (3) email files maintained on Defendant's enterprise email server
     (if any)).

PLTF'S BRIEF IN OPPOSITION TO DEF'S
MOTION FOR SUMMARY JUDGMENT – Page 5
(Case No. 2:15-cv-01605-RSM)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

20, 28 (D.C. Cir. 1998).  "[I]f a review of the record raises substantial doubt, particularly in view of well-defined requests and positive indications of overlooked materials, summary judgment is inappropriate."  *Hamdan v. DOJ*, 797 F.3d 759, 771 (9th Cir. 2015).

Defendant made an "unusual decision to employ the EDR process (*i.e.*, using IRS IT resources to collect custodians' ESI)" in searching for records responsive to Plaintiff's FOIA requests, and did not consistently implement that process.  Dkt. 51-1 (Goodson Decl., at ¶ 32).  Defendant allowed two critical custodians—Christopher Bello and Patricia Chaback[4]—to "opt[] out" of the ESI data capture process.  Dkt. 51-1 (Goodson Decl., at ¶¶ 33, 34).  Defendant concluded that no ESI data capture and search of Mr. Bello's ESI was necessary because it determined that it was "reasonably likely . . . that Mr. Bello had already provided all of his responsive records."  Dkt. 51-1 (Goodson Decl., at ¶ 33).  Defendant, however, provides no factual support for this conclusion, and later partially reviewed Ms. Chaback's ESI notwithstanding that she followed the same self-search procedures as Mr. Bello.  Dkt. 51-1 (Goodson Decl., at ¶ 35).  Defendant provides no reasonable explanation, beyond incoordination, for its disparate treatment of Mr. Bello's and Ms. Chaback's ESI.

"There may well be a good explanation for these inconsistent search methodologies, but Defendant does not provide it.  As a result, these inconsistencies provide another reason that the Court cannot conclude that Defendant's search—or at least its description of that search—is sufficient to warrant summary judgment."  *Roseberry-Andrews v. Dep't of Homeland Sec.*, 299 F. Supp. 3d 9, 25 (D.D.C. 2018).

---

[4] Both custodians had critical roles in Defendant's audit.  Mr. Bello was the branch chief of Branch 6 of the Office of the Associate Chief Counsel (International), the office which has subject-matter jurisdiction over international transfer pricing issues.  *See* Internal Revenue Manual pt. 30.3.2.3.6.1 (Jul. 21, 2005).  And Ms. Chaback was the Industry Director, Communications, Technology and Media.  Industry Directors work closely with the IRS Office of Chief Counsel to formulate and execute policies, strategies, operating priorities and programs for the particular industries on a nationwide basis.  Internal Revenue Manual pt. 30.3.2.4.2.2 (Jul. 21, 2005).

1    **II.     Defendant's *Vaughn* Index is Inadequate as a Matter of Law Because It Does Not**
2    **Provide Sufficient Information to Evaluate the Merits of Defendant's Claimed**
      **Exemptions.**

3            Defendant's *Vaughn* index suffers from material deficiencies.[5]  At minimum, "[a] *Vaughn*

4    Index must: (1) identify each document withheld; (2) state the statutory exemption claimed; and

5    (3) explain how disclosure would damage the interests protected by the claimed exemption."

6    *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1326 n.1 (9th Cir. 1995); *see also Favish*

7    *v. Office of Indep. Counsel*, 217 F.3d 1168, 1175 (9th Cir. 2000) ("The *Vaughn* index may consist

8    of detailed affidavits or other evidence 'showing that the information logically falls within the

9    claimed exemptions.'  Such affidavits may not be 'vague' or merely 'conclusory,' but should

10   disclose 'as much information as possible without thwarting the [claimed] exemption's

11   purpose.'").  Defendant's *Vaughn* index does not meet these standards, repeatedly reciting as the

12   bases for exemptions claimed the same generalized, substance-free entries, failing to include

13   requisite data for each document withheld, and improperly identifying document families.[6]  As

14   result, the *Vaughn* index does not afford Plaintiff "a meaningful opportunity to contest, and the

15   district court an adequate foundation to review, the soundness of the withholding."  *Wiener v.*

16   *F.B.I.*, 943 F.2d 972, 977 (9th Cir. 1991).

17           **A.      Defendant's *Vaughn* Index Includes Repetitive, Non-Descriptive Entries.**

18           For fully and partially withheld documents, Defendant repeatedly parrots non-substantive,

19   conclusory entries.  *See* Rosen Decl., Exs. 12-15.  For example, the *Vaughn* index repeatedly cites

20   as a "Description of Redacted Item(s)" the following vague, non-descriptive entries:

21   •  "Discussion regarding decisions to be made with respect to the Microsoft examination",
        used 565 times.

22   •  "Examiner's workpaper communicating analysis of issues being examined and aspects of
23      case management, for purposes of assisting with decisions involved in determing [sic]
        taxpayer liability", used 107 times.

24   _____

25   [5] Defendant's *Vaughn* index identifies approximately 4,360 documents that were not produced to Plaintiff.  *See* Rosen
     Decl., Ex. 20.

26   [6] Defendant provides no information in its *Vaughn* index "Exemptions" and "Bases" fields for 52 documents withheld
     in part or in full.  *See* Rosen Decl., Ex. 25.

- "Discussion including IRS and IRS attorneys regarding decisions to be made with respect to the Microsoft examination", used 169 times.
- "Internal communication among IRS examiners and agency attorneys regarding issues being examined and decisions to be made regarding taxpayer's liability", used 87 times.

*See id.*

The substance-free character of Defendant's entries—used to describe large sets of responsive records—does not offer an adequate basis for Plaintiff to adequately analyze Defendant's claimed exemptions. Mere "'conclusory and generalized allegations of exemptions' are unacceptable." *Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 830 (D.C. Cir. 1979) (quoting *Vaughn*, 484 F.2d at 826 (D.C. Cir. 1973)); *see also King v. DOJ*, 830 F.2d 210, 224 (D.C. Cir. 1987) ("*Vaughn*'s call for specificity imposes on the agency the burden of demonstrating applicability of the exemptions invoked *as to each document or segment withheld*.").

## B.    Defendant's *Vaughn* Index Does Not Include Important Information About Withheld Records.

For records withheld in part (and some in full), Defendant's *Vaughn* index excludes (or withholds) the date, author,[7] recipient(s),[8] and subject, each of which is fundamental. *See Sea Shepherd Legal v. Nat'l Oceanic & Atmospheric Admin.*, 516 F. Supp. 3d 1217, 1228-29 (W.D. Wash. 2021) (holding that a *Vaughn* index was adequate because it included a file name; the subject; the sender or author; the recipients, including those copied; the date; and the claimed exemption). In addition, Defendant's *Vaughn* index does not include entries for several pages with redactions.[9]  Instead, Defendant apparently relies on the documents themselves to provide that missing data.  While this two-source convention is unduly cumbersome and inconvenient, it is also

---

[7] Defendant provides no information in its *Vaughn* index "From" field for 77 fully withheld documents.  *See* Rosen Decl., Ex. 23.  Defendant cited 5 U.S.C. §§ 552(b)(3), (4), (5), and (7) as the bases for withholding "From" information in its *Vaughn* index for fully withheld documents.  *See id.*, Ex. 21.

[8] Defendant provides no information in its *Vaughn* index "To" field for 80 fully withheld documents.  *See* Rosen Decl., Ex. 24.  Defendant cited 5 U.S.C. §§ 552(b)(3), (5), and (7) as the bases for withholding "To" information in its *Vaughn* index for fully withheld documents.  *See* Rosen Decl., Ex. 22.

[9] *See, e.g.*, MSFOIA_RED000147, MSFOIA_RED001149, MSFOIA_RED006740, MSFOIA_WH029705-715.

PLTF'S BRIEF IN OPPOSITION TO DEF'S
MOTION FOR SUMMARY JUDGMENT – Page 8
(Case No. 2:15-cv-01605-RSM)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

distortive.  For several partially withheld email threads, Defendant redacts document authors and recipients.[10]  Accordingly, neither Plaintiff nor the Court can evaluate the merits of the claimed exemptions for those documents or whether Defendant has waived its rights to those exemptions.

**C.      Defendant's *Vaughn* Index Fails to Identify Document Families.**

Defendant's *Vaughn* index also fails to properly identify document families, omitting important context to determine the sufficiency of Defendant's FOIA exemption claims.  *Cf. Judge Rotenberg Educ. Ctr., Inc. v. FDA*, 376 F. Supp. 3d 47, 62 (D.D.C. Mar. 21, 2019) ("[O]rdinary practice leaves very little wiggle room in generally requiring an email with email with attachments be kept together as a single record.").  Courts have held that records for purposes of the FOIA are "any item, collection, or grouping of information" and only the information falling within a statutory exemption may be redacted from the collection. *Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review*, 830 F.3d 667, 678-79 (D.C. Cir. 2016).  Defendant's *Vaughn* index separates document families, includes attachments without parent documents, [11] does not include all document attachments, [12] and has duplicate "Clearwell DocID" numbers.[13]  Plaintiff cannot evaluate the merits of Defendant's exemption claims or whether the documents are responsive to its requests.  Document family data is necessary not only under the rule of completeness (*cf.* Fed. Rul. Evid. 106), but also so that a party may determine the context of the withheld document and whether the exemption should apply to the entire family or only a portion.

**III.     Defendant's Exemption Claims are Improper.**

**A.      Defendant Improperly Withholds Allegedly Non-Responsive Information.**

Defendant withholds, without basis, allegedly non-responsive information. *See* Rosen

---

[10] *See, e.g.*, MSFOIA_RED001419, MSFOIA_RED001482, MSFOIA_RED005821 .

[11] *See, e.g.*, MSFOIA_WH040696; MSFOIA_WH040739; MSFOIA_WH011448; MSFOIA_WH031000.

[12] *See, e.g.*, MSFOIA_WH060608, MSFOIA_WH060619, MSFOIA_WH060624, and MSFOIA_WH060625, (identifying Clearwell IDs 0.7.72.451570, 0.7.72.451570.3 0.7.72.451570.5, but not 0.7.72.451570.1, 0.7.72.451570.2 or 0.7.72.451570.4).

[13] *See, e.g.*, MSFOIA_RED000067, MSFOIA_RED000068, MSFOIA_RED000072, and MSFOIA_RED000074 (all with Clearwell DocID 0.7.72.23594); *see also* MSFOIA_RED000107, and MSFOIA_RED000110 (both with Clearwell DocID 0.7.72.23582).

PLTF'S BRIEF IN OPPOSITION TO DEF'S
MOTION FOR SUMMARY JUDGMENT – Page 9
(Case No. 2:15-cv-01605-RSM)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

Decl., Ex. 26.  There is, however, "no statutory basis for redacting ostensibly non-responsive information from a record deemed responsive."  *Am. Immigration Lawyers*, 830 F.3d at 670; *accord Wellman v. DOJ*, No. 3:14-cv-00348-MMD-WGC, 2018 U.S. Dist. LEXIS 166312, at *12 (D. Nev. Sept. 27, 2018).[14]  Nonetheless, Defendant withholds allegedly non-responsive content from responsive document families, providing no statutory basis for withholding the information. *See* Rosen Decl., Ex. 26.

**B.    Defendant's Exemption 5 Claims are Improper or Inadequate.**

Defendant's *Vaughn* index cites Exemption 5 as the basis for withholding approximately 7,357 documents or parts thereof.  Exemption 5 incorporates the protections and privileges present in civil litigation, including the attorney-client privilege, work product protection, and the deliberative process privilege.  5 U.S.C. § 552(b)(5); *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997).  Defendant has the burden to correlate, with reasonable specificity, withheld records with applicable exemptions.  *See Rein v. U.S. Patent & Trademark Office*, 553 F.3d 353, 366 (4th Cir. 2009).  "[T]he agency [must] provide enough information, presented with sufficient detail, clarity, and verification, so that the requester can fairly determine what has not been produced and why, and the court can decide whether the exemptions claimed justify the nondisclosure."  *Fiduccia v. DOJ*, 185 F.3d 1035, 1043 (9th Cir. 1999).

Defendant's Exemption 5 claims are improper or inadequate.  Many withheld documents, based on the *Vaughn* index's substantive entries, do not warrant Exemption 5 protection.  For many others, Defendant's *Vaughn* index does not provide sufficient information to determine the merits of those claims.  Accordingly, Defendant does not satisfy its burden.

---

[14] *See also Am. Immigration Lawyers*, 830 F.3d at 670 ("[O]nce the government concludes that a particular record is responsive to a disclosure request, the sole basis on which it may withhold particular information within that record is if the information falls within one of the statutory exemptions from FOIA's disclosure mandate.  But the government in this case, after determining that records were responsive to [plaintiff's] request, redacted discrete information within the records on the basis of non-responsiveness even if no statutory exemption shielded the information from disclosure. That approach cannot be squared with the statutory scheme.").

1.   **Defendant Makes Exemption 5 Attorney-Client Privilege Claims for Factual Information and Communications that Neither Solicit Nor Convey Legal Advice.**

Defendant claims attorney-client privilege for 3,172 records or parts thereof.  In many cases, Defendant broadly invokes attorney-client privilege protection—based on its *Vaughn* index descriptions—on purely factual information, which is not entitled to attorney-client privilege.

The attorney-client privilege only protects communications between a client and a lawyer for the purpose of obtaining legal advice.  *See U.S. v. Martin*, 278 F.3d 988, 999-1000 (9th Cir. 2002).

Defendant's claims of attorney-client privilege over factual information have no legal foundation.  Facts are not protected by the attorney-client privilege.  *See Upjohn Co. v. U.S.*, 449 U.S. 383, 395-96 (1981).  Nonetheless, Defendant cites the attorney-client privilege for documents with purely factual information, including audit workpapers.  Rosen Decl., Ex. 7.  Without more, those documents do not warrant attorney-client privilege protection.

2.   **Defendant Makes Exemption 5 Deliberative Process Privilege Claims For Records That are Neither Predecisional Nor Deliberative.**

Defendant claims deliberative process privilege protection for 7,336 entries in its *Vaughn* index.   The deliberative process privilege, however, applies only in narrowly-defined circumstances and with adequate factual support.  Defendant fails to make that showing here.

The deliberative process privilege shields from disclosure documents that are both "predecisional" and "deliberative."  *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988).  "A predecisional document is one prepared in order to assist an agency decision-maker in arriving at his decision, and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."  *Assembly of Cal. v. U.S. Dept. of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992).  A document is deliberative if its disclosure of the document "would expose

PLTF'S BRIEF IN OPPOSITION TO DEF'S
MOTION FOR SUMMARY JUDGMENT – Page 11
(Case No. 2:15-cv-01605-RSM)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1   an agency's decision-making process in such a way as to discourage candid discussion within the

2   agency." *Id.* at 921.

3        Defendant bears the burden of establishing the deliberative process involved and the role

4   played by the documents at issue in that process. *See Senate of Puerto Rico v. DOJ*, 823 F.2d 574,

5   585 (D.C. Cir. 1987).

6        "[S]traightforward explanations of agency regulations in specific factual situations do not

7   qualify as predecisional for purposes of the deliberative process privilege." *Safeway, Inc. v. IRS*,

8   No. C 05-3182 SBA, 2006 U.S. Dist. LEXIS 81078, at *26 (N.D. Cal. Oct. 24, 2006).  Documents

9   qualify as predecisional and deliberative only if they "reflect[] advisory opinions,

10  recommendations, and deliberations comprising part of a process by which governmental

11  decisions and policies are formulated." *Tax'n With Representation Fund v. IRS*, 646 F.2d 666, 677

12  (D.C. Cir. 1981).

13       In *Safeway*, the court found that "the IRS'[s] decisionmaking about the extent of

14  [p]laintiff's tax liability is not the sort of deliberative process meant to be addressed by the

15  privilege." 2006 U.S. Dist. LEXIS 81078, at *26.  The court found that characterizing documents

16  as "predecisional simply because they play into an ongoing audit process would be a serious

17  warping of the meaning of the word." *Id.*, at *26 (quoting *Coastal States Gas Corp. v. Dept. of*

18  *Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)).  In denying the IRS's motion for summary judgment,

19  the court found that the general description of the documents indicated that the withheld

20  information was merely "intra-agency discussion of how to apply established policy and law to

21  the particular facts of [taxpayer's] audit." *Id.* at *27.  The documents were presumed, therefore,

22  not to include "subjective, personal thoughts of IRS employees that could expose them to ridicule

23  or criticism," and, as a result, the documents were not protected by the privilege. *Id.*

24       Defendant currently seeks to protect similar content from disclosure.  *See* Rosen Decl.,

25  Ex. 6.  Many of Defendant's *Vaughn* index entries describe "[d]iscussion[s] including IRS and

26  IRS attorneys regarding decisions to be made with respect to the Microsoft examination." *See*

PLTF'S BRIEF IN OPPOSITION TO DEF'S
MOTION FOR SUMMARY JUDGMENT – Page 12
(Case No. 2:15-cv-01605-RSM)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1   Rosen Decl., Exs. 12, 14; *see also Safeway*, 2006 U.S. Dist. LEXIS 81078, at *26.  Defendant has

2   failed to demonstrate that these documents include "subjective, personal thoughts" that would

3   otherwise be protected under the deliberative process privilege.

4            Defendant also fails to provide adequate information to evaluate its deliberative process

5   privilege claims.  By not specifying the title, author, and recipients of each withheld document,

6   Defendant fails to establish the relationship between them—"[a] key feature under both the

7   'predecisional' and 'deliberative' criteria." *Access Reports v. DOJ*, 926 F.2d 1192, 1195 (D.C.

8   Cir. 1991).  For example, "a document from a junior to a senior is likely to reflect his or her own

9   subjective opinions and will clearly have no binding effect on the recipient." *Id.*  By contrast, one

10  moving from "senior to junior is far more likely to manifest decisionmaking authority and to be

11  the denouement of the decisionmaking rather than part of its give-and-take." *Id.*  Therefore, a

12  document from a subordinate to a superior is more likely to be deliberative in character than

13  documents traveling in the opposite direction. *See Senate of Puerto Rico*, 823 F.2d at 586 (citing

14  *Schlefer v. U.S.*, 702 F.2d 233, 238 (D.C. Cir. 1983)).

15           Defendant's *Vaughn* index does not identify the individuals who authored and received

16  partially withheld documents and withholds that data for certain fully withheld documents, and the

17  documents, themselves, offer few (if any) context clues as to author(s)' and recipient(s)' titles,

18  positions, and authority.  As a result, Defendant's *Vaughn* index is fundamentally insufficient to

19  support its deliberative process claims.

20           Defendant's *Vaughn* index also inadequately describes the contents and context of each

21  withheld or redacted document.  Courts require substantial information to support deliberative

22  process privilege claims.  In *SafeCard Servs.*, 926 F.2d 1197, for example, the court found that the

23  SEC improperly withheld information under the deliberative process privilege because the agency

24  did not "explain such matters as how decisions like those in issue are reached; the role that staff

25  discussion and memoranda play in such decisions; the manner in which such decisions are

26

PLTF'S BRIEF IN OPPOSITION TO DEF'S
MOTION FOR SUMMARY JUDGMENT – Page 13
(Case No. 2:15-cv-01605-RSM)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

memorialized and explained; and whether such decisions are treated, in later agency decisionmaking, as precedents." *Id.* at 1204.

Defendant's *Vaughn* index and declarations address none of those items.  Instead, it mechanically repeats non-descriptive entries to describe each records' redacted content.  For example, the Defendant cites as a "Description of Redacted Item(s)" for documents partially withheld on deliberative process grounds:

- "Examiner's workpaper communicating analysis of issues being examined, for purposes of assisting with decisions involved in determing [sic] taxpayer liability", is used 263 times.
-  "Discussion regarding decisions to be made with respect to the Microsoft examination, including information communicated with attorneys" is used 283 times.
- "Description of issues, timeline, amounts paid to contractor, and decisions to be made with respect to the Microsoft examination" is used 38 times.
-  "Invoice amounts . . ." or "invoice dollar amounts" is used 82 times.

*See* Rosen Decl., Exs. 16-19.

Plaintiff cannot discern from these *Vaughn* index entries and declarations which decision(s) the records precede and/or why the records are "deliberative."  Defendant has, therefore, failed to provide sufficient support for its deliberative process privilege claims.

### 3.     Defendant Makes Exemption 5 Attorney Work Product Claims for Records Not Prepared "in Anticipation of" or "Because of" Litigation.

Defendant claims work product protection for 19 documents.  It supports those claims with canned recitations that the records were prepared in anticipation of litigation.  Those claims, however, lack support in the record.

Work product protection under Exemption 5 protects materials prepared by an attorney or others in anticipation of litigation.  *See, e.g., Coastal States*, 617 F.2d at 864.  For work product protection to apply, "documents must have two characteristics: (1) they must be 'prepared in anticipation of litigation or for trial,' and (2) they must be prepared 'by or for another party or by or for that other party's representative.'" *In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 780-81 (9th Cir. 1989).

PLTF'S BRIEF IN OPPOSITION TO DEF'S
MOTION FOR SUMMARY JUDGMENT – Page 14
(Case No. 2:15-cv-01605-RSM)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1    Neither Defendant's *Vaughn* index nor its supporting declarations identify the litigation

2    anticipated at the time of respective documents' drafting.  Defendant represents that "[l]itigation

3    involving Microsoft became reasonably foreseeable during the audit to which the records

4    responsive to their FOIA request relate because Microsoft did not agree to the adjustments

5    proposed by IRS examiners.  This gave rise to the reasonable expectation that Microsoft would

6    challenge the unagreed adjustments in a pre-payment forum such as IRS Appeals or Tax Court,

7    rather than pay the liability determined by the examiners."  Dkt. 51-3 (Valvardi Decl., at ⁋ 43).

8    Notwithstanding these representations, Defendant never issued a litigation hold until after Plaintiff

9    filed its FOIA request.  Dkt. 51-1 (Goodson Decl., at ⁋ 17).  And more than 10 years later, Plaintiff

10   has yet to protest any income adjustments to IRS Appeals or the Tax Court.

11   Tax audits are not inherently adversarial.  *U.S. v. Baggot*, 463 U.S. 476, 480 (1983) ("[T]he

12   purpose of the audit is not to prepare for or conduct litigation, but to assess the amount of tax

13   liability through administrative channels.");  *Wells Fargo & Co. v. U.S.*, No. 10-57 (JRT/JJG), 2013

14   U.S. Dist. LEXIS 79814, at *113 n. 50 (D. Minn. June 4, 2013) ("[T]he IRS examination process

15   is not, in and of itself, litigation and will not necessarily lead to litigation.").  And Defendant's

16   self-serving statement that taxpayers "did not agree to the adjustments proposed", without stating

17   what adjustments were proposed, how those adjustments are connected to the specific documents

18   at issue, or what date Defendant began to anticipate litigation, is factually insufficient to support

19   Defendant's work product protection claims.  *See ACLU of N. Cal. v. DOJ*, 880 F.3d 473, 487 (9th

20   Cir. 2018) ("[T]he work product exemption, read over-broadly, could preclude almost all

21   disclosure from an agency with substantial responsibilities for law enforcement").

22   Defendant's prior statements to this Court contradict its current position.  In those

23   proceedings, Defendant represented to this Court that as of mid-2015, the audit had not progressed

24   to a point where litigation was reasonably anticipated.  *See, e.g.*, Rosen Decl., Ex. 2 (Evid. Hr'g

25   Tr. at 191:20-192:10) (Eli Hoory stating that the ultimate goal of the audit was "getting to the right

26   numbers").  This Court relied on that representation.  *See id.*, Ex. 3 (Summons Enforcement Order,

PLTF'S BRIEF IN OPPOSITION TO DEF'S
MOTION FOR SUMMARY JUDGMENT – Page 15
(Case No. 2:15-cv-01605-RSM)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

at \*16).  Now, in a different posture, Defendant disregards these previous representations to the Court.

Even if Defendant reasonably anticipated litigation (it did not), the agency has not demonstrated that it drafted the documents "because of" litigation.  "The work product doctrine only applies to documents prepared in anticipation of litigation.  This means that if a document would have been created in substantially similar form in the normal course of business, the fact that litigation is afoot will not protect it from discovery."  *Young v. Safeco Ins. Co. of Am.*, 2022 U.S. Dist. LEXIS 80978, at \*4 (W.D. Wash. May 4, 2022).  Where documents serve a dual purpose, *e.g.*, they were prepared for both litigation and governmental purposes, the court must consider whether the documents were created "because of" litigation.  *U.S. v. Richey*, 632 F.3d 559, 567-68 (9th Cir. 2011).  Courts look at the totality of the circumstances to determine whether the documents would not have been created "in substantially similar form but for the prospect of that litigation."  *U.S. v. Torf (In re Grand Jury Subpoena)*, 357 F.3d 900, 908 (9th Cir. 2004).

Defendant withheld documents under work product protection that are routine audit documents.  *See* Rosen Decl., Ex. 8.  Defendant's *Vaughn* index and declarations fail to address, in any manner, whether those documents were prepared in a form different than others commonly prepared during a tax audit.

## C.   Defendant Makes Exemption 3 Claims But Fails to Demonstrate How Disclosure of the Relevant Documents Violates 26 U.S.C. § 6103.

Defendant claims Exemption 3 protection for 7,449 records, claiming that disclosure of a substantial number of those documents would "seriously impair federal tax administration."[15] Defendant provides no support for that claim, merely noting in its *Vaughn* index that production of the now decade-old documents would "prematurely disclose . . . the scope, direction, and strategy of the IRS in conducting plaintiff's examination."  *See* Rosen Decl., Ex. 5.

---

[15] Of those 7,449, 1,266 are associated with 26 U.S.C. § 6103(a); 7,231 are associated with 26 U.S.C. § 6103(e)(7).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

Tax return information is confidential. 26 U.S.C. § 6103(a). However, a taxpayer's return information may be disclosed to the taxpayer if Defendant determines that such disclosure would not seriously impair Federal tax administration. 26 U.S.C. § 6103(e)(7).

Defendant's *Vaughn* index provides only general descriptions of documents withheld under Exemption 3. This alone is not "sufficient to enable [Microsoft] to challenge the agency's understanding of the scope of section 6103 reflected in the decision to withhold." *Wiener*, 943 F.2d at 982. The Ninth Circuit, in particular, requires Defendant to submit more than mere "conclusory and generalized allegations" regarding the application of Exemption 3 and 26 U.S.C. § 6103(a). *See Kamman v. IRS*, 56 F.3d 46, 49 (9th Cir. 1995).

Moreover, Defendant provides no support, in either its Motion for Summary Judgment or its declarations, for its Exemption 3 claims based on 26 U.S.C. § 6103(e)(7). Defendant has, therefore, either forfeited or waived those Exemption 3 claims. *See F.D.I.C. v. Garner*, 126 F.3d 1138, 1145 (9th Cir. 1997) (holding a party that presents no case law or argument in support of its claim waives the argument); *see also Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. We will not do his research for him."). And it has clearly not satisfied its burden for those claims under the FOIA. *E.g.*, *Wiener*, 943 F.2d at 983 (denying the government's Exemption 3 claim where the requester was provided no opportunity to contest the exemption due to insufficient facts or reasoning to support the claim).

**D.      Defendant Makes Improper Exemption 7(A) Claims.**

Defendant claims Exemption 7(A) protection for 7,220 records, but provides inadequate support for those claims.[16] To qualify for Exemption 7(A) protection, records must have been

---

[16] Plaintiff does not challenge Defendant's Exemption 7(E) claims.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1    "compiled for law enforcement purposes" and their disclosure must "reasonably be expected to

2    interfere with enforcement proceedings." 5 U.S.C.S. § 552(b)(7)(A).[17]

3         Defendant's declaration and *Vaughn* index entries supporting its Exemption 7(A) claims

4    are conclusory and non-descriptive.  *See* Rosen Decl., Ex. 10.  The declaration merely states that

5    the disclosure of the information would harm Defendant's enforcement activities.  *See* Dkt. 51-3

6    (Valvardi Decl., at ¶ 51).  Further, Defendant's *Vaughn* index includes boilerplate language for all

7    entries indicating that the information "could prematurely disclose to plaintiff the scope, direction,

8    and strategy of the IRS in conducting plaintiff's examination, thereby impairing Federal tax

9    administration."  *See* Rosen Decl., Ex. 10.  However, it is "not sufficient for the agency merely to

10   state that disclosure would reveal the focus of an investigation; it must rather demonstrate *how*

11   disclosure will do so."  *CREW v. DOJ*, 746 F.3d 1082, 1098 (D.C. Cir. 2014).  Defendant's failure

12   to provide this requisite nexus for its Exemption 7(A) claims—other than repeating non-

13   substantive generalizations—is fatal.

14   **E.    Defendant Makes Exemption 2 Claims for Information that Does Not Relate
15         to Personnel Rules and Practices.**

16         Defendant claims Exemption 2 protection for 18 documents not subject to that provision.

17   Exemption 2 permits agencies to withhold information related "*solely* to personnel rules and

18   practices." 5 U.S.C. § 552(b)(2) (emphasis added).  Under Exemption 2, "personnel" means "the

19   selection, placement, and training of employees and . . . the formulation of policies, procedures,

20   and relations with [or involving] employees or their representatives."  *Milner v. Dep't of the Navy*,

21   562 U.S. 562, 569 (2011).  Those records concern the condition of employment in federal agencies,

22   such matters as "hiring and firing, work rules and discipline, compensation and benefits."  *Id.* at

23

24

---

25   [17] While Defendant exercises a law enforcement function, it must be performing that function to apply Exemption 7.
     *See Church of Scientology v. IRS*, 995 F.2d 916, 919 (9th Cir. 1979); *see also Xanthopoulos v. IRS*, 35 F.4th 1135 (8th
26   Cir. 2022) (holding that Defendant is not solely a law enforcement agency, but also an administrative agency, thus
     courts must analyze the function the agency was performing when evaluating the merits of exemption claims).

PLTF'S BRIEF IN OPPOSITION TO DEF'S
MOTION FOR SUMMARY JUDGMENT – Page 18
(Case No. 2:15-cv-01605-RSM)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

570.  Exemption 2 "encompasses only records relating to issues of employee relations and human resources."  *Id.* at 581.

Defendant's Exemption 2 claims do not relate "solely" to Defendant's personnel rules and practices.  *See* Rosen Decl. Ex. 4.  Instead, certain withheld documents address decisions regarding Plaintiff's audit and the assignment of Defendant's personnel to the examination.  For example, one document is described as a "communication describing examiner's planned work on exam, and discussing agency resources and limitations."[18]  Exemption 2 does not shield from production those types of information.  *See Schwaner v. Dep't of the Air Force*, 898 F.2d 793 (D.C. Cir. 1990) (rejecting that a roster including the names and military duty addresses of Air Force personnel fell within the language of Exemption 2).

### F.    Defendant's Exemption 4 Claims Do Not Establish that Either the Information's Owner or the Government Viewed the Information as Private.

Defendant improperly claims Exemption 4 protection for 76 documents.  Exemption 4 protects "trade secrets and commercial or financial information obtained from a person" that is "privileged or confidential."  5 U.S.C. § 552(b)(4).  Where commercial or financial information is both (1) "customarily and actually treated as private by its owner," and (2) "provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4."  *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019).

Defendant does not apply the relevant standard.  Defendant states that the information withheld under Exemption 4 involves billing schedules, as well as information on invoices reflecting amounts billed and hours worked, and claims that this "information is confidential, as disclosing it could cause substantial harm to the competitive position of these institutions by allowing third parties to access funds in these accounts."  Dkt. 51-3 (Valvardi Decl., at ¶¶ 20, 21).  However, in 2019, the U.S. Supreme Court, in *Argus Leader*, rejected any obligation to show substantial competitive harm for information to fall within this Exemption 4's protection.  Instead,

---

[18] MSFOIA_WH050752.

PLTF'S BRIEF IN OPPOSITION TO DEF'S
MOTION FOR SUMMARY JUDGMENT – Page 19
(Case No. 2:15-cv-01605-RSM)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

the Court looked at whether "information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy."  139 S. Ct. at 2366. Defendant fails to adhere to the standard set forth *in Argus Leader* and explain whether the submitter, the government contractor, customarily treats this information as confidential.  *See id.* at 2363.  In addition, Defendant fails to specify whether the government provided an express or implied promise of confidentiality in the relevant information.  *Id.*

### G.   Defendant Makes Exemptions 6 and 7(C), Invasion of Personal Privacy Claims, But Does Not Establish that the Respective Privacy Interests are Nontrivial or More Than De Minimis.

Defendant claims Exemption 6 and Exemption 7(C) protection for 387 documents, but provides inadequate support for those claims.  Exemption 6 protects records about individuals when disclosure would be a clearly unwarranted invasion of personal privacy.  5 U.S.C. § 552(b)(6).  Exemption 7(C) protects records compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy.  5 U.S.C. § 552(b)(7)(C).

Courts apply a balancing test when evaluating an agency's Exemption 6 and 7(C) claims, "balanc[ing] the public interest in disclosure against the interest Congress intended the exemption to protect." *Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994).  The agency must show that the disclosures would subject individuals to "possible embarrassment, harassment, or the risk of mistreatment constitute nontrivial intrusions into privacy under Exemption 6." *Cameranesi v. U.S. DOD*, 856 F.3d 626, 638 (9th Cir. 2017).[19]  "If a nontrivial privacy interest is at stake, however, Exemption 7(C) requires a somewhat higher showing of public interest to overcome it than does Exemption 6."  *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 693 n.7 (9th Cir. 2012).

Defendant does not support that the disclosure of records withheld under Exemption 6 and

---

[19] If the agency demonstrates that "the personal privacy interest at stake . . . implicates a personal privacy interest that is nontrivial or . . . more than [] de minimis . . . the requester must show that the public interest sought to be advanced is a significant one and that the information [sought] is likely to advance that interest."  *Cameranesi*, 856 F.3d at 637.

PLTF'S BRIEF IN OPPOSITION TO DEF'S
MOTION FOR SUMMARY JUDGMENT – Page 20
(Case No. 2:15-cv-01605-RSM)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

Exemption 7(C) would be an unwarranted invasion of personal privacy.  Defendant indicates that records withheld under Exemption 6 include "personal information, the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy."  Dkt. 51-3 (Valvardi Decl., at ¶ 46).  However, the *Vaughn* index claims Exemptions 6 and 7(C) for employee vacation time, phone numbers, travel plans, and leave plans, which are not intimate personal details.  *See* Rosen Decl., Exs. 9,11; *see also Sims v. CIA*, 642 F.2d 562, 574 (D.C. Cir. 1980) (holding that proper Exemption 6 disclosures are those of an intimate personal nature such as "marital status, legitimacy of children, identity of fathers of children, medical condition, welfare payments, alcoholic consumption, family fights, and reputation.").

## CONCLUSION

It follows that Defendant's Motion for Summary Judgment should be denied.

RESPECTFULLY SUBMITTED this 22nd day of July, 2022.

**MORGAN LEWIS & BOCKIUS LLP**

By: *s/ Patricia A. Eakes*
Patricia A. Eakes, WSBA #18888
1301 Second Avenue, Suite 2800
Seattle, WA 98101
Tel: (206) 274-6400
Email:  patty.eakes@morganlewis.com

**BAKER & McKENZIE LLP**

By: *s/ Daniel A. Rosen*
Daniel A. Rosen (*pro hac vice*)
Brendan J. Sponheimer (*pro hac vice*)
452 Fifth Avenue
New York, NY 10018
Tel: (212) 626-4272
Email: daniel.rosen@bakermckenzie.com
brendan.sponheimer@bakermckenzie.com

*Attorneys for Plaintiff Microsoft Corporation*

PLTF'S BRIEF IN OPPOSITION TO DEF'S
MOTION FOR SUMMARY JUDGMENT – Page 21
(Case No. 2:15-cv-01605-RSM)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401