1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>INTERNAL REVENUE SERVICE,<br><br>Defendant. | Case No. C15-1605 RSM<br><br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |

## I.    INTRODUCTION

This Freedom of Information Act ("FOIA") matter comes before the Court on Defendant Internal Revenue Service ("IRS")'s Motion for Summary Judgment.  Dkt. #51. Plaintiff Microsoft Corporation has filed an opposition.  Dkt. #56.  The Motion was fully briefed on August 29, 2022.  Neither party has requested oral argument.  For the following reasons, the Court GRANTS Defendant's Motion and dismisses this case.

## II.    BACKGROUND

Microsoft filed this case in 2015.  Dkt. #1.  The FOIA requests were made in 2011. Dkts. #1-1 and #1-2.  They concern an IRS audit that began in 2007 for the tax years of 2004 through 2006.  Put another way, this case has seen three presidential administrations and the FOIA requests have been around for a decade.  The ongoing audit will turn 16 this year—

eligible for a driver's license.  If Microsoft owes back taxes, the money is old enough to vote.

Obviously, something has gone completely astray here, but today the Court is only tasked with

answering the relatively simple question of whether the IRS violated FOIA.

Microsoft sent two FOIA requests in August of 2011.  Dkts. #1-1 and #1-2.   These

requests sought "all documents relating to the IRS's examination and analysis under section

482" of two cost sharing arrangements, one covering the Asia, South East Asia, and South

Pacific regions ("APAC"), Dkt. #1-1, and one covering the Americas region, Dkt. #1-2.  Each

request, in eight main subparts, identified specific types of documents, certain custodians, and

various IRS and IRS Counsel offices that were to be included within the scope of the request.

Both requests were originally assigned to Senior Disclosure Specialist Brenda Ball.

Dkt. #51-1 ("Goodson Decl."), ¶ 10.  Later, Cathy Goodson, then Associate Area Counsel for

the Office of Chief Counsel Large Business & International ("Counsel LB&I") took over and

also assigned LB&I Counsel attorney Shawn Barrett.  *Id*. at ¶¶ 11–12.

The following month LB&I Counsel sent all individuals named in the FOIA requests a

copy and asked that they preserve all responsive documents.  *Id.* at ¶ 14.  They were told that

the FOIA requests were comprehensive, and incorporated all communications, including

emails, involving IRS employees or contractors regarding, referring, or relating to the

examination of the APAC and Americas issues.  *Id*.  Recipients were also asked to forward the

email to any other IRS or Counsel personnel who they believed could have documents

responsive to the requests.  *Id*.  Additional individuals thought to possess potentially responsive

information were identified, and in October 2011, Ms. Barrett emailed all potential IRS and

IRS Counsel custodians to request that they search their electronic and paper files for

responsive records. *Id.* at ¶ 15.  They were told to limit the scope of their search to documents

from February 2007 (when the audit began) through September 28, 2011 (when the FOIA requests were finalized). *Id.* Those who found responsive records were asked to send their documents to Ms. Barrett. *Id.* They were asked to record their search methodology, to tell Ms. Barrett if they had been unable to find any responsive documents, and to forward her email to any IRS or IRS Counsel personnel who they believed could have responsive documents. *Id.* The potential custodians were also asked to inform Ms. Barrett if they needed IT assistance. *Id.*

In October of 2011, Ms. Barrett emailed the above custodians to advise them that a litigation hold was being placed and that ESI procedures would be followed for collecting responsive records. *Id.* at ¶¶ 16–17.

In November 2011, Ms. Barrett provided the names of 27 IRS and Counsel employees who had been identified as custodians of data responsive to the FOIA requests to Procedure and Administration ("P&A") Branch 8, an office within Chief Counsel responsible for data capture of ESI for litigation purposes. *Id.* at ¶¶ 16, 18. She later provided three more names of custodians. *Id*. at ¶ 18. In the meantime, Ms. Barrett, after consulting LB&I Counsel, LB&I Examination, and P&A Branch 8, created a list of keyword terms that could be used by IRS IT to run against data once it had been captured. *Id.* at ¶ 19.

In December 2011, P&A submitted a priority electronic discovery request ("EDR") to IRS IT. *Id.* at ¶ 20. When implementing an EDR, IRS IT copies documents stored on an employee's hard drive, any shared or external drives, and email stored in the Microsoft Outlook Exchange servers. *Id.* at ¶ 21. Four individuals named in or within the scope of the FOIA requests had left the IRS or Counsel before receipt of the requests: Charles Davis, Barbara Leonard, Robert Geraghty, and Kenneth Christman. *Id.* at ¶ 22. IRS IT was asked to collect ESI for these individuals, but found material for only three of them. *Id.* These three custodians'

documents were included in the ESI database used to search for responsive records to the extent other custodians had duplicate copies of the three custodians' electronic records. *Id*. The ESI database also included copies of emails maintained by other custodians, but which had been sent to or received from, these separated individuals. *Id.* IRS IT wrapped up its work in April 2013. *Id.* at ¶¶ 23–24.

There were also documents collected outside the above EDR process, such as hard copies. *See* Dkt. #51 at 6–8. All custodians were asked to search records in their possession and to upload scans of such documents to the shared drive. *Id*. at ¶ 28. When custodians stated that portions of the requests were ambiguous, Ms. Barrett asked the assigned Disclosure Specialist to contact Microsoft to clarify the type of information being sought by the FOIA requests. *Id*. at ¶ 29.

Two custodians opted out of the ESI data capture process: Christopher Bello and Patricia Chaback. *Id*. at ¶¶ 33–34. These custodians conducted their own searches, with some level of review by Ms. Barrett and/or the other IRS and IRS IT individuals identified above. *See id*.

After Microsoft filed this action in October 2015, the IRS re-reviewed the records it released. Ultimately, the IRS has released 91,900 pages in full, 13,000 pages in part, and withheld 49,400 pages in full. Dkt. #51-3 ("Valvardi Decl."), ¶ 5. Over the last seven years, the parties have apparently engaged in good faith back and forth efforts to review and release these documents, as evidenced by countless joint status reports and unopposed motions to extend deadlines. *See* Docket. The IRS now moves for summary judgment dismissal.

## III.     DISCUSSION

### A.  Legal Standard

In FOIA cases, the usual summary judgment standards apply and "if there are genuine issues of material fact in a FOIA case, the district court should proceed to a bench trial or adversary hearing" and issue findings of fact and conclusions of law. *Animal Legal Def. Fund*, 836 F.3d at 990 (citing Fed. R. Civ. P. 52(a)(1)); *see also Cameranesi v. United States DOD*, 856 F.3d 626, 636 (9th Cir. 2017) ("We have now overruled this FOIA-specific summary judgment standard, and instead apply our usual summary judgment standard.").

Accordingly, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

FOIA establishes "a judicially enforceable right to secure [government] information from possibly unwilling official hands." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361, 96 S.

Ct. 1592, 48 L. Ed. 2d 11 (1976) (citing S. Rep. No. 813, 89th Cong. (1st Sess. 1965)); *see also Lahr v. NTSB*, 569 F.3d 964, 973 (9th Cir. 2009). The aim of these disclosure requirements is to "ensure an informed citizenry, vital to the functioning of democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242, 98 S. Ct. 2311, 57 L. Ed. 2d 159 (1978); *see also Hamdan v. United States DOJ*, 797 F.3d 759, 770 (9th Cir. 2015); *Shannahan v. I.R.S.*, 672 F.3d 1142, 1148 (9th Cir. 2012).

Federal agencies have a duty to construe FOIA requests liberally. *Yagman v. Pompeo*, 868 F.3d 1075, 1080 (9th Cir. 2017). Upon receipt of a FOIA request, a federal agency "shall make the records promptly available," 5 U.S.C. § 552(a)(3)(A), and "shall make reasonable efforts to search for the records" responsive to a request. *Id*. § 552(a)(3)(C)–(D). The agency must establish that it conducted a search "reasonably calculated to uncover all relevant documents." *Silbaugh v. Pizzella*, No. C18- 1182-JCC, 2019 WL 4392502, at *3 (W.D. Wash. Sept. 13, 2019) (citing *Zemansky v. E.P.A.*, 767 F.2d 569, 571 (9th Cir. 1985)). Agencies must respond to FOIA requests within twenty business days of receipt, *id*. § 552(a)(6)(A)(i), and disclose responsive documents unless one or more of FOIA's exemptions apply. These exemptions are "narrowly construed." *Shannahan*, 672 F.3d at 1149. An agency bears the burden of establishing that an exemption applies. *Lahr*, 569 F.3d at 973. "Any reasonably segregable portion of a record shall be provided" to the FOIA requester. 5 U.S.C. § 552(b).

**B.  Analysis**

   **1.  Adequacy of the Search**

FOIA requires the responding agency to demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents. This showing may be made by

"reasonably detailed, nonconclusory affidavits submitted in good faith." *Lahr*, 569 F.3d at 986 (9th Cir. 2009) (quoting *Zemansky,* 767 F.2d at 571 (9th Cir. 1985)). Affidavits submitted by an agency to demonstrate the adequacy of its response are presumed to be in good faith. *Grand Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771, 224 U.S. App. D.C. 1 (D.C.C. 1981). However, FOIA places the burden "expressly . . . 'on the agency to sustain its action.'" *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 755 (1989). In evaluating the adequacy of the search, the issue "is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Lahr*, 569 F.3d at 987. "[T]he failure to produce or identify a few isolated documents cannot by itself prove the searches inadequate." *Id*. at 988.

*Lahr* makes clear that a search is not inadequate for failure to turn up a single document, *see id*. at 987 (citing *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315, 354 U.S. App. D.C. 230 (D.C. Cir. 2003)). However, "it may be the case that 'if a review of the record raises substantial doubt, particularly in view of well-defined requests and positive indications of overlooked materials, summary judgment is inappropriate." *Hamdan v. United States DOJ*, 797 F.3d 759, 771, 2015 (quoting *Iturralde*, 315 F.3d at 314).

The IRS maintains that its search efforts were reasonable and adequate under law. Dkt. #51 at 10–12. The IRS argues that the reasonableness of the search "is judged by the process, and not the fruits of the search," citing *Zaldivar v. United States Dep't of Veterans Affairs*, No. CV1401493PHXDGCDMF, 2016 WL 4429657, at *3 (D. Ariz. Aug. 22, 2016), *aff'd*, 695 F. App'x 319 (9th Cir. 2017). *Id.* at 10. Anticipating Microsoft's arguments, the IRS cites *SafeCard Servs., Inc. v S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) for the proposition that a requester cannot challenge the adequacy of a search by "purely speculative claims about the

existence and discoverability of other documents." *Id.*   The IRS relies on its attached declarations and contends that "once the agency submits declarations in support of its search, the burden shifts to the requester to introduce evidence of bad faith to rebut the presumption." *Id.* (citing *SafeCard*, 926 F.2d at 1200).

Microsoft's Response leans heavily on vague, conclusory accusations of an inadequate search without supporting detail. Microsoft states that the IRS "applied inconsistent search conventions" and implemented "disparate search standards for similarly situated custodians without reasonable explanation." Dkt. #56 at 3. Microsoft points to any and all irregularities in this search process, including that the IRS allowed two custodians to conduct independent searches of their ESI.

The Court has thoroughly reviewed the steps taken by the IRS to conduct the FOIA searches at issue here. The Court agrees with the IRS that they were reasonable and adequate under the circumstances of this case and the above law. Microsoft has failed to introduce evidence of bad faith or to otherwise demonstrate that the IRS's actions were unreasonable. The search efforts, as described above, meet the standard of being "reasonably calculated to uncover all relevant records" and were made in good faith. The Court has no reason to conclude otherwise. Any irregularities are adequately explained, and might be expected given the size and scope of the requests. The hypothetical failure to find documents from individuals who left the IRS is speculative and does not speak to the adequacy of the search. This is not a basis to deny summary judgment.

**2.   Adequacy of the *Vaughn* Index**

Anticipating this issue, the instant Motion argues, in a footnote:

> "The adequacy of a *Vaughn* Index is not defined by its form, but rather its substance." *People for the Am. Way Found. v. Nat'l Park*

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 8

*Serv.*, 503 F. Supp. 2d 284, 294–95 (D.D.C. 2007) (citation omitted). A *Vaughn* Index is not expected to be "a work of literature," and "agencies are not graded on the richness or evocativeness of their vocabularies," *Landmark Legal Found. v. IRS*, 267 F.3d 1132, 1138 (D.C. Cir. 2001), nor on the length of their document descriptions, *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006). The relevant inquiry in analyzing the adequacy of a *Vaughn* Index is "whether the index provide[s] a relatively detailed justification, specifically identif[ies] the reasons why a particular exemption is relevant and correlat[es] those claims with the particular part of a withheld document to which they apply." *People for the Am. Way Found.*, 503 F. Supp. 2d at 295 (internal quotation marks and quotation omitted).

Dkt. #51 at 12 n.2.

Microsoft argues that the *Vaughn* index is inadequate, "repeatedly reciting as the bases for exemptions claimed the same generalized, substance-free entries, failing to include requisite data for each document withheld, and improperly identifying document families." Dkt. #56 at 8. The specific data that is withheld for some documents includes the "date, author, recipient(s) and subject." *Id.* at 9. Microsoft criticizes the IRS for relying on the documents themselves to provide justification for redacted data, which it calls a "two-source convention." *Id.* Microsoft states that the IRS has separated attachments from emails and thus destroyed "document family data." *Id.* at 10.

The IRS replies that "categorization and repetition provide efficient vehicles by which a court can review withholdings that implicate the same exemption for similar reasons," "[e]specially where the agency has disclosed and withheld a large number of documents," citing *Jud. Watch, Inc.*, 449 F.3d at 147 ("No rule of law precludes [an agency] from treating common documents commonly."). Dkt. #66 at 5. The IRS also cites to *Landmark Legal Found. v. IRS*, 267 F.3d 1132, 1138 (D.C. Cir. 2001) for the proposition that "[i]t is not the agency's fault that thousands of documents belonged in the same category, thus leading to

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 9

exhaustive repetition." *Id*.  The IRS asserts that when not otherwise apparent on the face of a document, the *Vaughn* index includes date, author, recipient, and subject, and argues that Microsoft fails to identify a specific list of offending entries.  *Id*. at 6.  The IRS calls the alleged destruction of document family data "cursory and context-free."  *Id*.  The IRS asserts that it is entitled to treat emails and attachments as separate records, and explains its process for when it concluded that an attachment was not responsive to the FOIA requests.  *Id*. at 7.

Considering the *Vaughn* index and the declarations filed in this case together, the Court finds that the information provided in that index was not inadequate for the general reasons argued by Microsoft.  The use of repetitive entries does not reflect a lack of substantive information but rather the large number of documents at issue and, perhaps, the repetitive nature of work at the IRS.  While the IRS's *Vaughn* index might be monotonous, or even less-than-helpful from the perspective of Microsoft, courts have found that repetitive entries are efficient for the Court and certainly the producing agency.  Microsoft's "cursory and context-free" criticism of the *Vaughn* index is adequately rebuffed by the IRS's explanation of its procedure, perhaps more complicated than it needed to be, for reporting date, author, recipient, and subject information and document family data.  Cutting out nonresponsive records appears to be an appropriate use of agency discretion.  Microsoft's frustrations with the *Vaughn* index do not preclude summary judgment dismissal of this case.

### 3.  Exemptions

The IRS has withheld or redacted documents based on FOIA exemptions 552(b)(2), (b)(3), (b)(4), (b)(5), (b)(6), (b)(7)(A), and (b)(7)(C) (exemptions 2, 3, 4, 5, 6, 7A and 7C).

### i.  Exemption 2

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 10

Exemption 2 protects from disclosure matters "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 2 thus "applies to internal rules and practices exclusively connected with 'the selection, placement, and training of employees,' including 'hiring and firing.'" *Rojas v. Fed. Aviation Admin.*, 941 F.3d 392, 402 (9th Cir. 2019 (citing *Milner v. Dep't of Navy*, 562 U.S. 562, 569–70 (2011)).

The IRS points to the declaration of Christopher Valvardi to support the use of this exemption for withholding "security-related forms and communications used when hiring employees or contractors; and employee workloads forms and performance records used for determining work assignments." Dkt. #51 at 13 (citing Valvardi Decl. ¶ 10–12).

Microsoft disagrees with the use of this exemption for 18 documents, but cites in briefing only a single example—a document described as a "communication describing examiner's planned work on exam, and discussing agency resources and limitations." Dkt. #56 at 20.  Microsoft compares this to a document where the exemption 2 claim was rejected *in Schwaner v. Dep't of the Air Force*, 898 F.2d 793 (D.C. Cir. 1990), a "roster including the names and military duty addresses of Air Force personnel." *Id*.

Microsoft provides no evidence or argument to support the assertion that this document or similar documents relate to *decisions* regarding Plaintiff's audit.  It is also not comparable to a roster including names and addresses.  It is described as a workload form, *i.e.* a form used to determining work assignments.  It appears to be exclusively "connected with" the placement of employees and with personnel practices.  The IRS has met its burden of establishing that this exemption applies.

ii.     **Exemption 3**

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 11

FOIA exemption 3 permits an agency to withhold information that is specifically exempted from disclosure by statute.   5 U.S.C. § 552(b)(3).   At issue in this Motion are documents withheld under Sections 6103 of Title 26.

Section 6103(a) provides that tax "returns" and "return information" are to be kept confidential, unless disclosure is permitted by Title 26.   *Church of Scientology of California v. IRS*, 484 U.S. 9 (1987). "Return information" is defined and construed broadly, and includes practically any data "received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence of, or possible existence of liability (or the amount thereof) of any person[.]" 26 U.S.C. § 6103(b)(2)(A).   Third parties may not obtain such "return information" of another person without that person's written authorization. *See* 26 U.S.C. § 6103(c), 26 C.F.R. § 601.702(c)(4)(i)(E) & (c)(5)(iii).

Section 6103(e)(7) provides that "[r]eturn information with respect to any taxpayer may be open to inspection or by disclosure . . . if the Secretary [of the Treasury] determines that such disclosure would not seriously impair Federal tax administration."

The IRS claims exemption 3 protection for 7,449 records: 1,266 are associated with 26 U.S.C. § 6103(a); 7,231 are associated with 26 U.S.C. § 6103(e)(7).   The first 7,449 records contain "the tax information of third parties, including: names, taxpayer identification numbers, or other identifying information… the fact of whether a particular taxpayer's return is being examined; and descriptions of examination or collection activity."   Dkt. #51 at 14 (citing Valvardi Decl. ¶ 13-16).

Microsoft lamely criticizes the *Vaughn* index for only providing general descriptions of these documents but fails to talk about any specifics.   Microsoft argues the IRS has waived its

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

withholding of documents under 26 U.S.C. § 6103(e)(7) by failing to argue that point in its Motion.  However, Microsoft again does not discuss any specific documents.  The Court is completely in the dark as to the actual dispute, or if there is one here.  Microsoft argues that withholding such records could not impair Federal tax administration because ten years have passed; this is ironic, given that *this* case proves audits can last ten years.

Given the above, the Court cannot deny summary judgment based on this exemption or order the production of any documents. Further, the IRS has adequately explained on Reply that its support for § 6103(e)(7) withholdings is contained in an errata and the Walter Choi Declaration, inadvertently filed on the docket in the related FOIA cases Case No. 15-cv-369-RSM.  Dkt. #66 at 11.  Given the extreme circumstances of these complicated cases, the unusual burden placed on counsel for both sides, and the lack of prejudice to Microsoft, the Court can forgive this mistake.  *See Aug. v. FBI*, 328 F.3d 697, 702 (D.C. Cir. 2003).  The Choi declaration provides substantial detail justifying the IRS's withholdings under § 6103(e)(7) and the IRS's Vaughn index details the tax return information records withheld under these exemptions.  The IRS has met its burden of establishing that this exemption applies.

### iii.    Exemption 4

Exemption 4 protects "trade secrets and commercial or financial information obtained from a person" that is "privileged or confidential." 5 U.S.C. § 552(b)(4).  The redacted information here includes information provided by various contractors before, during, or after the contract such as contractors' proposed, prospective, or actual billing schedules, as well as information on invoice documents reflecting amounts billed, hours worked, and bank account numbers.  Valvardi Decl. at ¶¶ 20–21.

The IRS claims exemption 4 for 76 documents at issue.  The Court finds that the withheld information is "commercial or financial information" under the ordinary meaning of that phrase.  *See Pub. Citizen Health Res. Group v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983) ("Records that actually reveal basic commercial operations, . . . or relate to the income-producing aspects of a business," fall within the scope of "commercial" information).  This is the type of information that would typically be confidential.  *See Rocky Mountain Wild, Inc. v. United States Forest Serv.*, No. 18-CV-03065-MEH, 2021 WL 825985, at *19 (D. Colo. Mar. 4, 2021) (regarding "corporate bank account numbers, estimated insurance premiums, and information provided in connection with billing statements from Plaintiff's counsel"); *Calderon v. U.S. Dep't of Agriculture*, 236 F. Supp. 3d 96, 119 (D.D.C. 2017). The IRS has met its burden.

### iv.    Exemption 5

FOIA exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). As the language suggests, exemption 5 incorporates those privileges which the government enjoys in pretrial discovery under relevant statutes and case law. *See United States v. Weber Aircraft Corp.*, 465 U.S. 792, 799 (1984). This exemption incorporates the governmental deliberative process privilege, the attorney-client privilege and the work-product doctrine. *See Tax Analysts v. IRS*, 294 F.3d 71, 76 (D.C. Cir. 2002).

The Vaughn index cites exemption 5 as the basis for withholding approximately 7,357 documents or parts thereof.

**Deliberative process privilege**

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 14

Defendant bears the burden of establishing the deliberative process involved and the role played by the documents at issue in that process. *See Senate of Puerto Rico v. DOJ*, 823 F.2d 574, 585 (D.C. Cir. 1987). Documents qualify as predecisional and deliberative only if they "reflect[] advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Tax'n With Representation Fund v. IRS*, 646 F.2d 666, 677 (D.C. Cir. 1981). Microsoft cites to *Safeway, Inc. v. IRS*, No. C 05-3182 SBA, 2006 U.S. Dist. LEXIS 81078, at *26 (N.D. Cal. Oct. 24, 2006) as a case on point. In *Safeway*, the court found that "the IRS'[s] decisionmaking about the extent of [p]laintiff's tax liability is not the sort of deliberative process meant to be addressed by the privilege." 2006 U.S. Dist. LEXIS 81078, at *26. The court found that characterizing documents as "predecisional simply because they play into an ongoing audit process would be a serious warping of the meaning of the word." *Id*., at *26 (quoting *Coastal States Gas Corp. v. Dept. of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)).

The IRS distinguishes *Safeway* by arguing that court "assumed that the documents at issue lacked the subjective, personal thoughts of IRS employees in the absence of a sufficient description of the documents' contents, which is not the situation here." Dkt. #66 at 9 n.9. The IRS counters by citing to some cases of its own where the deliberative process privilege was upheld for workpapers and other audit documents. *Id*. (citing *Highland Cap. Mgmt., LP v. Internal Revenue Serv.*, 408 F. Supp. 3d 789, 815 (N.D. Tex. 2019) (finding documents to be clearly "pre-decisional, since they were generated prior to the IRS's final decision to adjust Plaintiff's tax liability") and *Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1280 (11th Cir. 2004)).

Further, the IRS points to the Valvardi declaration as containing "much of the information that Plaintiff complains is lacking, including the function and role of the documents, many of which are drafts…" *Id.* (citing Valvardi Decl. at ¶¶29-38).

The Court's decision here does not seem to be bound to controlling law.  Each party cites to district court cases coming to different conclusions.  The Court finds that, given the scope and unusual nature of this case, the documents at issue are not related to a run-of-the-mill assessment of a company's tax liability, but closer to a process by which governmental decisions and policies are formulated.  The explanation for the use of this privilege is sufficient and seems better than what was available to the court in *Safeway.* The IRS has met its burden.

**Attorney client privilege**

The attorney-client privilege, as incorporated into exemption 5, protects from disclosure "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data Central, Inc. v. Dep't of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977).

Based on the information in the Valvardi declaration and the *Vaughn* index, the IRS argues that the documents withheld under this privilege were communications "(1) among government attorneys reflecting the facts provided by the Service in order to obtain advice, or reflect the advice being developed by government attorneys to benefit the agency; (2) among Chief Counsel attorneys relating to legal advice requested on behalf of the Service; and (3) among Service employees and examiners and Chief Counsel for legal advice on Plaintiff's examination.  Dkt. #51 at 19–20 (citing Valvardi Decl. at ¶¶ 23–26).

The IRS claims attorney-client privilege for 3,172 records or parts thereof.  Microsoft's only argument related to this privilege is that "in many cases" this privilege is involved "on

purely factual information…. including audit workpapers." Dkt. #56 at 12.  Again, Microsoft does not provide any specifics or further detail.

While facts alone are not protected, communications between an attorney and a client are, even if those communications contain facts, if the purpose of the communication is to enable the attorney to provide legal advice.  That is what we are talking about here.  The documents Microsoft objects to are apparently workpapers provided to IRS Chief Counsel attorneys as part of a request for advice on a particular issue, while others are workpapers containing handwritten notes or analysis that were sent to an attorney to solicit or inform legal advice.

**Work product privilege**

Work product protection under exemption 5 protects materials prepared by an attorney or others in anticipation of litigation.  The IRS initially claimed work product privilege for 19 documents.  Microsoft points out that, although this audit process has been lengthy, it was not clear when these documents were created that there would be litigation, and that the IRS has said as much previously. Dkt. #56 at 15–17.  In its Reply brief, the IRS concedes that point and withdraws its work-product claims for any materials pertaining solely to Microsoft.  Dkt. #66 at 10.  The IRS has amended its *Vaughn* index (Dkt. #66-3) and submitted a supplemental declaration (Dkt. #66-2) to support the continued withholding of documents "for which the IRS asserts work-product claims relate to tax cases involving taxpayers other than Plaintiff."  *Id*. The Court is satisfied that this issue has been resolved and does not serve as a basis for precluding summary judgment.

      **v.**      **Exemptions 6 and 7(C)**

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 17

Personnel, medical, and similar files where the disclosure of such information would constitute a "clearly unwarranted invasion of personal privacy" are exempt from disclosure. 5 U.S.C. § 552(b)(6). In determining whether exemption 6 applies, the court considers two factors: (1) whether the information is in a personnel, medical, or "similar" agency file; and (2) whether a countervailing public interest in the record outweighs in the individual's privacy interest. *Multi Ag Media LLC v. U.S.D.A.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008). The Supreme Court has broadly interpreted "similar files" as any information that "applies to a particular person." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982). Courts have found that individuals have a sufficient interest in the privacy of their names, addresses, finances, and so on, to justify withholding under exemption 6. *See Multi Ag Media*, 515 F.3d at 1230. Meanwhile, the public's interest is limited to the statutory purpose of FOIA — to "shed light on an agency's performance of its statutory duties." *See DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989).

Exemption 7(C) authorizes the withholding of information compiled for law enforcement purposes, the release of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. §552(b)(7)(C). In applying the personal privacy exemptions under FOIA, the courts must balance the private and public interests involved. *See, e.g., Halloran v. Veterans Admin.*, 874 F.2d 315 (5th Cir. 1989).

The IRS claims exemption 6 and exemption 7(C) protection for 387 documents at issue. The parties agree that the information withheld under this exemption includes personal phone numbers, personal email addresses, home addresses, credit card information, and details of personal matters pertaining to agency employees such as travel plans. Microsoft argues, without further analysis and in a single sentence, that "employee vacation time, phone numbers,

1  travel plans, and leave plans" are not intimate personal details.  Dkt. #56 at 22.  The Court

2  disagrees and finds that exemptions 6 and 7(C) were properly applied by the IRS.

3  **vi.    Exemption 7A**

4  FOIA exemption 7 exempts from disclosure "records or information compiled for law

5  enforcement purposes."  5 U.S.C. § 552(b)(7).  The threshold determination under exemption 7

6  is whether the documents at issue were (a) compiled by a law enforcement agency; and (b)

7  compiled for a law enforcement purpose(s). *Abramson v. FBI*, 456 U.S. 615, 622 (1982). The

8  IRS is a law enforcement agency for purposes of exemption 7. *Church of Scientology v. IRS*,

9  995 F.2d 916, 919 (9th Cir. 1993); *Keys v. DOJ*, 830 F.2d 337, 340 (D.C. Cir. 1987).  Courts

10  have consistently held that records compiled for civil or criminal investigations by the IRS are

11  "records or information compiled for law enforcement purposes." *Tax Analysts*, 294 F.3d at 77.

12  FOIA exemption 7(A) applies to information whose disclosure "could reasonably be

13  expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). It is properly

14  invoked when release of a document would hinder an agency's ability to control or shape an

15  investigation.  *Swan v. SEC*, 96 F.3d 498, 500 (D.C. Cir. 1996).

16  The IRS claims exemption 7(A) protection for 7,220 records.  Given the nature of the

17  audit against Microsoft and the obvious intent of Microsoft to inquire about that audit via these

18  FOIA requests, it would appear that some use of this exemption is to be expected.  The IRS

19  cites several cases to support this exemption under these circumstances:

> Under exemption 7(A), the Service must show that records could
> reasonably be expected to interfere with enforcement proceedings
> by showing that (1) law enforcement proceeding is pending or
> prospective, and (2) release of information about it could
> reasonably be expected to cause articulable harm. *See, e.g., NLRB
> v. Robins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978) (holding
> that government must show how records "would interfere with a
> pending enforcement proceeding"); *Sussman v. U.S. Marshals*

*Serv.*, 494 F.3d 1106, 1113–14 (D.C. Cir. 2007) (discussing dual elements necessary to invoke exemption 7(A): reasonably anticipated law enforcement proceeding and harm if information released).

A court may make generic determinations that disclosure of certain types of investigatory records would generally interfere with certain kinds of enforcement proceedings. *Robbins Tire & Rubber*, 437 U.S. at 223–24; *see also Spannaus v. DOJ*, 813 F.2d 1285, 1288 (4th Cir. 1987). Records may be withheld categorically or individually from disclosure under FOIA exemption 7(A). *DOJ v. Reporters' Comm. for Freedom of the Press*, 489 U.S. 749 (1989) (where the Court found that records could be categorically withheld under FOIA exemption 7(C), it relied in part on cases in which records were categorically withheld under 7(A)).

In determining whether disclosure of a category of records would "interfere" with enforcement proceedings, Courts have also interpreted "interference" broadly. For example, in Robbins Tire, the Supreme Court found that permitting a plaintiff earlier and greater access to documents or other information collected by the agency than it would normally be entitled, constitutes the type of interference exemption 7(A) was enacted to prevent. *Robbins Tire & Rubber*, 437 U.S. at 236. Other courts have found that interference with enforcement proceedings occurs by revealing the identities of potential witnesses, the nature, scope, direction, and limits of the investigation, the transactions being investigated, information on third-party contacts, the evidence obtained to date, the reliance the agency places on the evidence, and the Government's strategies and theories. *Curran v. DOJ*, 813 F.2d 473, 474 (1st Cir. 1987); *Barney v. IRS*, 618 F.2d 1268, 1273 (8th Cir. 1980). In upholding this exemption, the cases add that FOIA was not intended to be used as a discovery tool. *See United States v. Murdock*, 548 F.2d 599, 602 (5th Cir. 1977).

Dkt. #51 at 23–24.  This case law supports the IRS's use of boilerplate language applying this exemption to categories of documents.  Microsoft fails to argue, in a nonconclusory way, how the so-called boilerplate language fails to satisfy the above standards.   The Court gives credence to the IRS when it says that the material withheld here includes "information on the agency's focus or interest in specific facts, transactions, individuals, evidence, or claims which would prematurely disclose the nature, scope, direction, and strategy of the audit" and that this

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

would naturally harm the IRS's enforcement activities.  *See* Dkt. #51 at 24 (citing Valvardi Decl. at ¶¶ 50–52).  The use of this exemption does not preclude summary judgment.

## C. Microsoft's Surreply

Microsoft has filed a Surreply arguing that the IRS improperly added new arguments and facts on Reply.  Dkt. #69.  The Court finds that the IRS has attached a declaration that was inadvertently missing from its original Motion, but which was filed in the parallel FOIA case 2:15-cv-00369-RSM involving these same parties.  Microsoft has no legitimate claim of prejudice from this error.  Microsoft's Surreply continues to vaguely challenge the IRS's actions here without specifics.  The Court declines to strike anything.

## IV.    CONCLUSION

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that the IRS's Motion for Summary Judgment. Dkt. #51, is GRANTED. Plaintiff's remaining claims are DISMISSED.  This case is CLOSED.

DATED this 18th day of January, 2023.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 21